### Mead *vs.* Merritt and Peck.

Where a party is within the jurisdiction of the court, and the court acquires jurisdiction of his person, it may, although the subject matter of the suit is situated elsewhere, by injunction and attachment, compel him to desist from commencing a suit at law either in this state or in any foreign jurisdiction ; and may also in the same manner compel him to execute a conveyance or a release in such form as is necessary to transfer the legal title to the property in question, according to the laws of the country where the same is situated, or as will be sufficient to bar an action in any foreign tribunal.

The court of chancery, however, will not by injunction restrain a suit or proceeding previously commenced in a court of a sister state, or in any of the federal courts.

An executor or administrator cannot, either at law or in equity, set off a demand purchased by him after the death of the testator or intestate, against

a debt due by the estate to the person against whom he held the demand so purchased.

It is against the principles of sound policy to permit executors to $^t$ purchase up claims against the creditors of the estate of the testator, for the purpose of obtaining a set off in equity.

An executor cannot set off in chancery an original debt due to him personally, against a claim of the defendant on the estate.

Where there is no set off at law, there must be special circumstances of equity to authorize a set off in chancery.

S. SHERWOOD, who died in the state of Connecticut, was indebted to the defendant Peck; who afterwards transferred the demand to Merritt, in security for a debt due to the latter. After the death of Sherwood, the complainant, as his executor, obtained letters testamentary on his estate, before the court of probate in that state. He subsequently obtained from the same court an order for the sale of the testator's real estate, in Connecticut, for the payment of his debts. He also executed a bond with security according to the laws of that state for the faithful execution of his trust, and conditioned to pay to the creditors their respective portions of the estate of the decedent. A suit was afterwards commenced against the executor in the supreme court of this state, in the name of Peck, to recover the amount of his debt out of the monies in the hands of the former. The supreme court decided that a suit could not be sustained against the executor here, and that the remedy of the creditor was by a resort to the probate court under whose direction the estate had been sold. (*Peck* v. *Mead*, Exr. &c. 2 Wend. R. 470.) The executor thereupon filed his bill in this cause, alleging, among other things, that he had purchased a note against Peck, which he insisted was an equitable set off against the claim of the latter upon Sherwood's estate. He also alleged that the demand of Peck, who was insolvent, had been assigned to Merritt to defeat the complainant's claim to a set off; that the defendants were about to institute proceedings against him and his sureties in the state of Connecticut; and that by the laws of that state, he could not retain any part of the money of the estate in his hands to meet the note which he had obtained against Peck. The master allowed an injunction restraining the defendants from proceeding in that state

to recover the amount of their demand. On the coming in of the answer of Merritt, who denied all fraud in obtaining the assignment of the claim of Peck, an application was made to dissolve the injunction.

*W. Silliman,* for the complainant.

*W. N. Dyckman,* for the defendant Merritt.

THE CHANCELLOR. Where a party is within the jurisdiction of this court, so that on a bill properly filed here, this court has jurisdiction of his person, although the subject matter of the suit may be situated elsewhere, it may, by the ordinary process of injunction and attachment for contempt, compel him to desist from commencing a suit at law, either in this state or any foreign jurisdiction. And it may, in the same manner, compel him to execute a conveyance, or release, in such form as may be necessary to transfer the legal title to the property according to the laws of the country where the same is situated; or which will be sufficient in law to bar an action in any foreign tribunal. The court of chancery in England has even gone so far as to restrain the defendant from proceeding in a suit previously commenced in the court of sessions in Scotland. (*Bushby* v. *Munday*, 5 Mad. R. 297.) In that case Sir John Leach admits that, by the act of union, the courts of Scotland are entirely distinct and independent jurisdictions. And says that the same principles would apply were the suits which are sought to be enjoined pending in any foreign jurisdiction. Although this court has the physical power to act coercively on the parties within its jurisdiction to the same extent, it has frequently decided that it would not sustain an injunction bill to restrain a suit or proceeding, previously commenced in a court of a sister state; or in any of the federal courts. The same principle has been adopted by the supreme court of the United States. (*Driggs* v. *Wolcott*, 4 Cranch, 179. *McKim* v. *Voorhees*, 7 id. 278.) And I am not aware that any court of equity in the union has deliberately decided that it will exercise the power, by process of injunction, of restraining proceedings which

have been previously commenced in the courts of another state. Not only comity, but public policy forbids the exercise of such a power. If this court should sustain an injunction bill to restrain proceedings previously commenced in a sister state, the court of that state might retaliate upon the complainant, who was defendant in the suit there; and by process of attachment, might compel him to relinquish the suit subsequently commenced here. By this course of proceeding, the courts of different states would indirectly be brought into collision with each other in regard to jurisdiction; and the rights of suitors might be lost sight of in a useless struggle for what might be considered the legitimate powers and rights of courts.

The injunction in this case, so far as it operates to restrain the defendants from applying to the court of probates in Connecticut, to compel the complainant and his sureties to pay their demand out of the fund, which is under the exclusive control of that court, is directly opposed to these principles, which may now be considered the settled law of this country. The estate of the testator must be applied in satisfaction of his debts according to the laws of the state where he was domiciled, and where the property was situated. If those laws give it to the assignee of Peck, to the exclusion of the complainant's set off, the latter has no right to have a different rule of equity applied to his case here.

Independent of this question of jurisdiction, it is evident that the complainant has no right to the equitable interposition of this court. The note of Peck, which he purchased since the death of Sherwood, and now holds in his own right could not, at law, be set off against Peck's demand upon the estate of the testator. And it would be inconsistent with the principles of sound policy to permit an executor to buy up claims against creditors of an estate, for the purpose of obtaining a set off in equity. In *Harvey* v. *Wood*, (5 Mad. R. 459.) Sir John Leach decided that an executor could not set off in chancery an original debt, due to him personally, against a claim of the defendant on the estate. That where there was no set off at law, there must be special circumstances of equity to authorize a court of chancery to inter-

fere.    Here Merritt who is the bona fide assignee of Peck,
for a valuable consideration has at least equal, if not superi-
or equity.    In such a case this court will not interfere and
deprive him of his legal right.

The injunction must therefore be dissolved.