By the Court,

Bronson, J.
These are independent covenants. The defendants were to pay $300 of the consideration money, on the first of May, 1835, and the residue on the first day of November thereafter. The plaintiff was not to assign until the last payment was made, unless the defendants, on making the first payment, gave security for the residue. The defendants suffered the first of May to pass without making the payment due on that day, or offering security for the balance. If, on that day, they had tendered the $300 and offered security for the residue, the covenants would then have become dependent, and the plaintiff would have been bound to assign before lie could maintain an action for the first installment. It is impossible to distinguish this case, in principle, from Greenby v. Cheevers (9 [378] Johns. R. 126, and Robb v. Montgomery, 20 id. 15). The decision, in the last case, was not put upon the sufficiency of the replication, but on the ground that the defendant neither made the first payment nor offered to give a bond and mortgage to secure the residue.
As the precise question presented by the pleas has been a longtime settled in this court, it can not be necessary to inquire whether a different rule was laid down in Sir Anthony Main's case (5 Coke, 21). The pleas demurred to are all bad in substance.
The Chief Justice concurred.
Mr. Justice Cowen dissented and delivered the following opinion:
I concede that the fifth and sixth pleas are bad. They admit that the plaintiff had title on the first of May, and merely complain that he did not assign or tender an assignment. Admitting him to have a title, it was the defendant’s duty to perform the condition precedent, which was to pay $300, and give security, and this they were bound to do before they could put the plaintiff in default. Not having done or offered to do either, of course the $300 became absolutely due. To prevent this, the defendants should have moved on their part with the money and security on the first of May, demanding the assignment. This would have made the covenants concurrent and dependent throughout.
With deference, however, I think the third and fourth pleas stand on a totally different ground. Their "legal argument in the mouth of the defendants, is, “ True, we were bound to go with the money and security on the first day of May, to entitle ourselves to an assignment; at any rate, we were bound by covenant to pay the $300; but on inquiry, we found the plaintiff had no title. He had thus broken his covenant, and not only absolved us from all conditions, but actually became liable to us in damages without [379] any tender or other act on our part.” If such an argument be sound, if all obligation to pay and give security by way of condition were gone, and the plaintiff liable for breach of covenant, I can certainly feel no difficulty in saying that the defendants’ covenant to pay was also discharged. The great object and consideration of the defendants entering into the agreement had failed; and they may avoid the whole. It makes no difference that the contract was sealed, especially, since the 2 R. S. 406, § 77. See Judson v. Wass, 11 Johns. R. 525; Per Spencer, Ch. J. in Parker v. Parmele, 20 id. 130, 133; Case v. Boughton, 11 Wendell, 106; 1 Chitty’s Gen. Pr. 299; 2 Kent’s Comm. 469, 470, 3d ed.
Suppose the plaintiff, after entering into the covenant, had declared distinctly to the defendants that he would never perform, and that they need not call or take any pains to pay, or give security: this is put in the books as absolving or discharging the vendee from any necessity of performing a *215 condition, precedent or concurrent (1 Chitty's Gen. Pr. 495, 6; Frauchet v. Leach, 5 Cowen, 506, 508). It is the language of the law, that the party entitled to require the tender, has discharged the opposite party from all obligation. If, says Mr. Chitty, the other party either prevented his performance, or rendered it unnecessary by his neglect, or discharged the plaintiff from the performance on his side, he may sue without a tender or offer (I Chitty's Gen. Pr. 495, 6).
If B. sell to A. a horse, to be paid for on delivery, A., in an action for the non-delivery of the horse, must aver and prove a previous request to B. to deliver him. In such case the request is a condition precedent (1 Chitty's Gen. Pr. 497; Black v. Owen, 5 T. R. 409; Rawson v. Johnson, 1 East. 204). But if it be known that B. had incapacitated himself for performing his contract, as that he has re-sold and re-delivered the horse to another person, this dispenses with the performance of the condition, and an action lies immediately; averment of the disqualification to perform is equivalent to averring a literal performance of the condition (1 Chit. Gen. Pr. 497; Bowdell v. Parsons, 10 East, 359; Amory v. Brodrick, 5 Barn. & Ald. 712). In an action on a general promise to marry, it is necessary to [380] aver and prove a request as a condition; but not if the opposite party have already disqualified himself to perform by marrying another, or if he absolutely refuse to marry at any time (1 Chit. Gen. Pr. 497; Seymour v. Gartside, 2 Dowl. & Ryl. 55; 1 Chit. Gen. Pr. 57, note n. 2 Carr. & Payne, 634).
And this has been the settled law ever since Sir Anthony Main’s case (0 Co. Rep. 21, on Err). Sir Anthony leased lands to Scot for 21 years, by indenture, and covenanted that at any time during Scot’s life upon surrender of his lease, Sir Anthony would make a new lease, and gave bond to perform this covenant. In debt on the bond, by Scot against Main, the latter pleaded that Scot did not surrender. Scot replied that Main had, after the lease, granted the reversion to another for 80 years; and on demurrer, judgment was given for the plaintiff. The court say that Main had broken his covenant, without a surrender, because he had disabled himself, and the law will not enforce any one to do a thing which will be vain and fruitless; and although the lessee, by the words, was to do the first act, yet as the lessor had disabled himself, his covenant was broken without that act. It is said in the case, that “ If you are bound to enfeoff me of the manor of D. before such a feast, if you make a feoffment of the said manor to another before the said feast, you have forfeited your obligation, although you re-purchase the land again before the feast, because you were once disabled to make the feoffment.” It was said, also, the plaintiff, Scot, was not to make the surrender but with intent to have a new lease. The same case, to the same effect, is reported in several books. It began in the 0. B. and the judgment was affirmed in the K. B. on error. The case on error is also reported in Poph. 109, where the indentures and the pleadings are set forth more at length. The lease was renewable for another term of 21 years, on a surrender being made with a new lease ready engrossed by Scot. The plea to the bond is thus stated in the report: “ And the said Sir Anthony, as to the said covenant pleaded, did not surrender, nor offer to surrender to him the said demise, nor offer to him any new demise of the premises ready engrossed,” &c. Replication as stated in Coke. Judgment for the [381] plaintiff in C. B. The report in Popham then proceeds: “ A writ of error was brought in the king’s bench and argued this term [Mich. T. 38 and 39 Eliz.] and it was moved that the judgment given was erroneous, inasmuch as the first act was to be done by John Scot before the new lease was to be made, to wit, the surrender of the former lease and the drawing of the new one, ought to have been done by the plaintiff; to which it was *216 answered by the court, that the plaintiff here need not to make any offer of the surrender of his term to the said Sir Anthony, inasmuch as the said Sir Anthony has disabled himself, &c., and by this disabling of himself the obligation is forfeited.”
The authorities cited show then conclusively, that in the case at bar the defendants might, at any time after the first of May, without offering the $300 or tendering the security for the balance, have sued the plaintiff for a breach of his covenant to convey. Now it is clear they could not do that unless they had first performed the condition precedent, or something had been done equivalent to performance. If either of these things have taken place, it follows that no action lies against the defendants.
Sir Anthony Mains case was never questioned, but as we have seen, has been repeatedly affirmed by modern authority. That the cases I have cited from T. R., from East, and Barn. & Aid. as to a request, are exactly the same in principle, is evinced by the 2d resolution in Main’s case, which is this: “ If a man, seized of lands in fee, covenants to enfeoff J. S. of them upon request, and afterwards he makes a feoffment in fee of the said lands; now in this case, J. S. shall have an action of covenant without request. And that, in effect, is all one with the principal case.” That resolution is recognized and acted upon in Delamater v. Miller (1 Cowen, 75).
It is no answer to say the defendants took one of two conditions on which they might compel the plaintiff to assign. The strongest light in which this can be put, is that the defendants had agreed with the plaintiff that he [382] might go without any title over the 1st of May; and if they did not actually give the security, or at least offer to give it, title or no title, they would wait till the next payment, viz: the 1st of November. If the agreement were expressly so, mentioning title or no title, then I agree that might be the case. It is not so, however, and we must look to the construe tion which the law gives it. I can not think that the good sense of the matter would make it so. Such an act would, at least, be very idle on the part of the defendants. Why should we understand them as dispensing with all necessity of title on the 1st of May, when they have expressly required the plaintiff to be ready, and he has expressly covenanted to convey on that day, in a certain event ? Is there any reason, in such a case, for depriving the defendants of their cross suit ? Are we authorized to pronounce for them, that there was nothing intended which is usual in such covenants? They may now aver in the common way, in an action on their side, that the plaintiff dispensed with a formal offer to pay and give security by parting with his title. Are we authorized to say to them, " You agreed, title or no title, to make a tender, that is, to do every thing on your side, when you knew that it would be an idle ceremony ? You thought you had really contracted for something on the first of May. The plaintiff now writes you or tells you plainly, I have got no title, and do not mean to have any title the 1st of November. Come and offer to pay me the $300, and offer me the security you proposed; yet I will not on any terms, for I can not, convey to you the value of a rush. I claim the right to tantalize you. If you will get your rights, come and tender; come with your conveyance in hand and the money in your pocket, and your mortgage security drawn out at expense, in order that I may meet you with a fia.t refusal or a mere inability.” It is said in Main's case, the law will not require a vain thing. It can no longer be said, if we overrule these pleas.
It is said by several of our cases, that in placing a construction on covenants with a view to settle their dependent or independent character, the intent and safety of the parties shall be looked at, without a close adherence to technical rules. It appears to me that nothing short of some unbending technical rule, well settled in our own cases, ought to tie us up to the con *217 struction now contended for by the plaintiff. I think I have shown it to be inertly arbitrary and without any apparent reason; and that it violates all the analogy of adjudged cases. Nay, as I understand them, it would directly conflict with all the cases. If it ever existed in the construction of covenants, escape into the line of general principle is at least worth an effort^ since this kind ot contract is for the purpose of defence, brought to the standard of simple promises by the revised statutes. A condition of this kind may be quite important with the view to prevent a resale. At the time of the bargain, the vendor owns the estate and is responsible; on the day for performing the alternative, he has perhaps become a bankrupt; he has fraudulently sold to another and gone and settled at a distance. Is it reasonable to demand a performance; a pursuit to his residence, and an election to take what he has not got; to give a grave notice, “ Sir, I am ready to pay and give security to a man of straw?” It is just as reasonable as if he were his next door neighbor, only the expense is in the one case greater than the other. In either it is competent to say he is a man of straw, and he has sold out, got no title, or what is worse, never had any, and may become bankrupt before the day of the second payment. The alternative which he held out was faithless and illusory, and the defendants need not go near him.
It is said if the performance of the condition be tendered, the vendor may make himself ready on the same day. So the seller of the horse might have repurchased, and Sir Anthony Main might have got back his title; but the day has come, he has not done it, and his horse has gone to Boston, or his title is in another. Here the real owner of the estate is perhaps in the West indies. Is the party bound to that degree of confidence and credulity? The answer is again, disability dispenses with literal performance. There was an important alternative on the plaintiffs’ side, a power and a readiness to assign on the first day; then the defendants expected possession; they had made their arrangements accordingly; yet they are only asked to take one slight additional step in the iuj ury of their affairs, for a hopeless [384] purpose, rendered so by a heartless vendor.
It is supposed that there are adjudications in this court which establish such an anomaly in the law of covenants. Rob v. Montgomery (20 Johns. R. 15), and Greenby v. Cheevers (9 id. 126), are relied oil as instances. So far from that being the case, I understand both those authorities as virtually conceding the contrary; as assuming that the rule laid down in Sir Anthony Main’s case was sound, and as not at all questioning its application where the vendor is absolutely destitute of title at the day. So far from it, in both those cases, the plaintiff, who was the vendor, retained the complete control of the title at the day. It was upon that ground alone that the actions were maintained; and 1 collect from both, that had not that been so, the actions would, in the opinion of the court, have failed. In form, the covenants were the same as that now in question. In the first case Rob had agreed to convey at the time of the second payment, the defendant covenanting that in the mean time he would make the first payment, with leave, as here, to give security for the balance, and demand a deed at the time of the first. He, too, pleaded want of title at the first day, the time of the alternative; and what did the plaintiff do? admit the fact as here; say he was in truth stripped of title, and demur? No such thing. He replied that he had indeed parted with his title to one Bemiss, but with the express agreement that Bemiss should convey to the defendant in the plaintiff’s stead; and that notice of this had been given to the defendant. The latter demurred; and I do not understand the chief justice, who delivered the opinion of the court, as saying, that had not this been so, the plaintiff could still have maintained his action; on the contrary, he said the conveyance to Bemiss, under such circumstances, in truth, worked no real want of ability to per* *218 form. He speaks of Bemiss being a trustee ready to convey; his being obliged to convey, and standing obnoxious to a bill for specific performance in equity; and well might he add in that case, that had the defendant appeared at the day with his security, non constat, that the plaintiff would not, had it been necessary, have been re-invested with the title. This [385] was said in reply to the argument that the defendant was entitled to insist on a conveyance from the plaintiff himself. But that in truth was no argument. On the bill for specific performance, chancery would simply have ordered Bemiss to convey. It was but turning the defendant over to a good title from an assignee; a good and ready title was all he wanted; and pains was taken to give him notice that he should have one. He was but caviling.
The distinction between -the case at bar and Greenby v. Cheevers, is still more striking. In the latter, the vendor had merely mortgaged his title to another; and I need not refer to cases for what has long been the well settled doctrine of this court, that as to all the world except the mortgagee, the mortgagor or other person holding the equity of redemption, is the real owner subject to the mortgage, which is looked upon as but a pledge or personal security. In that sense the vendor had not parted with his title; and the remark of Spencer, Ch. J., in Rob v. Montgomery, comes with greater force, non constat, that had the money been paid and the security offered at the day, the mortgage would not have been displaced. The very money to be paid would have enabled the vendor to redeem, to re-invest himself with the formal title even without the concurrence of the mortgagee.
On the whole I feel quite clear that the third and fourth pleas should be allowed as a good bar; but a majority of the court holding otherwise, judgment must be rendered for the plaintiff on all four of the pleas.
Judgment for the plaintiff.