VIELE and others *vs.* THE TROY AND BOSTON RAIL ROAD COMPANY.

In equity, on a bill for a specific performance, the leading inquiry is, whether *in conscience* the contract should be enforced; and mere technical objections that would defeat an action at law for damages are not allowed to produce inequitable and oppressive results.

If it be conscientious that an agreement should be performed, though the action be lost at law by the default of the party seeking a specific performance, it will notwithstanding, be decreed, where time *is* not the essence of the contract.

Thus, if a vendor's remedy at law is gone, by reason of there having been a mortgage on the premises, so that he could not convey a good title at the day fixed upon by the contract, he may bring a suit in equity for a specific performance, where the purchaser is in possession of the premises, and will lose nothing by the delay, and there is nothing to show that the parties have made time of the essence of the contract.

The plaintiffs and defendant entered into a written contract for the sale of certain lands by the former, to the latter, the price to be fixed by third persons. The plaintiffs were to convey a perfect title to the premises, and the defendants were to pay the price within ten days after notice of the award. Within the ten days the vendors tendered a deed, properly executed. No objection was made to the title. Shortly afterwards the deed was again tendered to the president of the defendant's company. He raised no objection that the tender came too late, or that the property was incumbered, but subsequently returned the deed; the defendants, however, still continuing in the possession and use of the land, and taking no steps to abandon the contract. At the time the deed was tendered there was a small incumbrance, by mortgage, upon the farm, of which the premises agreed to be sold were a part. This was paid, however, within 18 days after the award was made, and prior to the commencement of the suit.

*Held*, 1. That the acts of the defendants amounted to a waiver of the condition to convey a perfect title within ten days after notice of the fixing of the amount of the purchase money.

2. That the parties had not made time the essence of the contract, nor was it a condition precedent to the payment of the purchase money that a perfect title should be furnished within the ten days. That there was nothing, therefore, in the omission of the plaintiffs to make a perfect title within the time specified, to prevent a court of equity from decreeing a specific performance of the contract by the purchasers; provided a good title could be made at the time of the decree.

Whether a court of equity shall decree the specific performance of an agreement, is a matter resting in its discretion; but this is a sound legal discretion. The court will not lend its aid to enforce an unconscientious contract. The case presented must be fair, just and reasonable, the contract free from fraud, misrepresentation, or surprise, and not hard, unconscionable or unequal.

It must also be entered into upon adequate consideration; and when the inadequacy of price, in a contract to sell, is so great as to be conclusive evidence of fraud, as where it would shock the moral sense of an indifferent man, a court of equity should not carry it into effect.

But inadequacy of price merely, without being such as to prove fraud conclusively, the contract being entered into deliberately, and fair in all its parts, is not an objection to its being executed.

An award of arbitrators may be vitiated in a court of equity, for partiality or corruption in either of them; but it is no ground for setting it aside that the arbitrators erred in receiving impertinent and incompetent evidence.

In an action for the specific performance of a contract of purchase, the fact that arbitrators chosen by the parties to fix upon the price to be paid for the land, have received and acted upon incompetent evidence, is not pertinent proof, and ought not to be received.

Where a specific performance is decreed in favor of a vendor, he will be entitled to interest on the purchase money from the time the deed was tendered; where the purchaser is in possession of the premises and has not tendered the purchase money nor demanded a deed, and thereby put the vendor in default.

APPEAL from a judgment of the circuit court. The defendants' rail road having been located over the lands of the plaintiffs, and the parties not being able to agree upon the compensation to be paid for the lands required for the purposes of the road, in January, 1851, entered into an agreement nominating and appointing three persons, (or any two of them,) appraisers to ascertain, appraise and determine the compensation to be paid to the plaintiffs for the lands required by the defendants for the use of the road, and also all damages and costs sustained and to be sustained in consequence of locating and constructing the road. The agreement further provided that the appraisers, or any two of them, should within three days after meeting and viewing the lands, determine and state in writing the amount of compensation to be paid by the rail road company, and within three days afterwards give notice to each of the parties of such determination. It was further agreed that within ten days after notice of such appraisal the plaintiffs should execute and deliver to the defendants a good and valid deed of conveyance of the lands required, thereby conveying the lands to the defendants by a good title free from incumbrances; and at the time of delivery of the conveyance, the defendants

should pay to the plaintiffs the sum or amount of compensation ascertained and determined by the appraisers as aforesaid. The agreement contained a further provision, that if either of the parties should refuse, neglect or fail to perform any of the stipulations contained in it, such party failing should pay to the other the sum of $500; which sum was agreed on as stipulated damages to be paid by the defaulting party.

On the 23d January, the arbitrators met on the premises (the parties being present) and heard proofs and arguments, and on the following day two of them made an award. The form of the award was agreed on by the counsel of the respective parties, and a copy delivered to each party. By this award the rail road company was to pay to the plaintiffs the sum of $2850, and the plaintiffs were, on the tender and receipt of the money, to execute a conveyance of the premises, according to the terms of the submission. The land taken was short of three acres. On the third of February, the plaintiffs tendered a deed to the secretary and treasurer of the company, which the latter declined to accept, and said that he had no authority to pay without an order from the president, and he had gone east. This deed contained a covenant that the premises were free from incumbrances. At the time there was a mortgage on the lands to the loan commissioners of the county of Rensselaer, on which there was due the sum of $350. This mortgage was discharged on the 11th February, 1851, by the payment of the balance then due on it. On the return of the president of the company, one of the plaintiffs presented the deed. It was retained by the president and referred to the attorney of the company, who reported that the property was incumbered by mortgages; and the deed was returned to the plaintiffs' attorney. Just previous to the award one of the plaintiffs forbade the workmen of the defendants from going on to the land until he got his pay. They then ceased their operations until after the award, and then they resumed them. There was about 150 acres, altogether, in the plaintiffs' farm, and, as a farm, was worth from $50 to $60 per acre. The defendants not paying the award, the plaintiffs brought their action, demanding a judgment " for the specific

performance of the agreement of the 18th January, 1851, and that the defendants accept the deed tendered, and pay to the plaintiffs the sum of $2850, with interest thereon from the 24th January, 1851; and that the defendants be restrained from further entering upon or in any manner using and occupying the said lands until the same be paid."

The defendants set up in their answer that the award of the two arbitrators who signed the same, was obtained by fraud and collusion, and that they were governed by unlawful and improper considerations, and by prejudice, partiality and malice, and motives originating in supposed personal grievances, and received and based their award upon impertinent and incompetent evidence; that the premises were never at any time within ten days after the signing and delivery of the supposed award, free from incumbrances; but on the contrary at the time of the supposed tender of a deed of the premises the same were incumbered to a large amount by mortgages, and that the president of the company retained the deed for the sole purpose of ascertaining whether or not the premises were free from incumbrances, (relying for the time on the plaintiffs' assertion that they were,) and on discovering through the examination of the defendants' attorney that such was the fact, immediately returned the same to the plaintiffs' attorney.

The action was tried at a circuit court in Rensselaer county, in October, 1852, before Justice C. L. ALLEN, without a jury. The plaintiff having proved a mortgage on the premises, existing as late as the 11th February, 1851, (some 18 days after notice of the award,) for $350, the defendants made the objection that the testimony showed that the title was not free from incumbrance at the time of the tender of the deed, and insisted that all testimony in relation to the tender and demand of payment should be stricken out or disregarded, which objection was overruled, and the defendants excepted; and the court held and decided that he would hold the tender, under the circumstances, a sufficient compliance with the condition for a clear title; to which the defendants excepted.

The plaintiffs having rested, the defendants' counsel moved

for a nonsuit, urging as grounds therefor : 1st. That the award was not in conformity with and in pursuance of the submission, and exceeded the power of the arbitrators, as it excused the plaintiffs from giving a deed until tender of payment, whereas the submission required a deed in ten days. 2d. That the plaintiffs had not proved a fulfillment, on their part, of the submission, in that they had not within the time specified for that purpose, given or tendered a good and valid deed of conveyance, conveying the lands in question free and clear of all incumbrances. 3d. There was no sufficient evidence of notice to the respective parties, of the award, within three days after the same was made. 4th. That it was optional with the defendants to forfeit $500 liquidated damages, as stipulated in the submission, instead of complying with the award, and that having been in possession before any award or submission, the fact of possession could have no effect to deprive them of this option. The nonsuit was denied by the judge, and the defendants excepted. The defendants then called the arbitrator who had refused to sign the award, and proved by him that Goveling, one of the arbitrators who had signed it, said upon the hearing, that the company had been guilty of misrepresentation, and had induced him to settle for less than the value of his land, and he would be glad to make them sweat for it, if he could. The defendants then offered to prove that the arbitrators received proof or representations from Gen. Viele, of expenses incurred by him in attending the legislature to lobby against an amendment of the general rail road law, which the defendants sought to get passed to enable them to get their titles, and that the arbitrators actually allowed some $80 on that account, in the award, and allowed the further sum of $500 to indemnify the plaintiffs against the chance that at some future day they might lose the life of a son or child by the engine ; which proof was objected to by the plaintiffs' counsel, and the objection sustained by the court ; to which decision the defendants' counsel excepted. The defendant's counsel then read in evidence a certificate of the clerk of Rensselaer county, setting forth and stating the mortgage to the commissioners of loans for $875, as appearing

of record, an incumbrance upon the premises in question. In this certificate there appeared two other mortgages given by one of the plaintiffs, John J. Viele, but whether they covered any part of the lands taken by the rail road company, was not shown.

The judge made the following decision : " Judgment will be given for a specific performance of the contract by the defendants, provided the plaintiffs can now make a perfect title to the premises ; and if the defendants desire, it may be referred to some person to be named in the judgment, to ascertain and report upon the title, with this provision, that if the title shall be found perfect, the expenses of the reference must be paid by the defendants ; otherwise by the plaintiffs. The defendants to pay the purchase money, with interest from the time of the tender of the deed on the 3d February, 1851, and take the conveyance within thirty days. Neither party to recover costs against the other unless the plaintiffs' title proves defective, and shall not be made perfect, in which event the complaint is to be dismissed with costs. Costs are not allowed plaintiffs for the want of proof of tender of deed and demand of money after the satisfaction of the mortgage and before action brought, and are not allowed to the defendants for the reason that they refused to accept the conveyance and pay the award, and the defense of the action was not placed distinctly upon the ground that the title was defective, but upon other distinct grounds. The judgment may contain such other provisions as the parties may suggest and which may be necessary to protect their rights, and may be drawn up and agreed upon or settled upon notice." There was no exception in form to this decision.

The form of the judgment was subsequently agreed upon by the attorneys of the respective parties, and entered. It orders · a specific performance of the agreement, provided that the plaintiffs can make a good title to the premises. It refers the matter to Hiram P. Hunt, Esq., (agreed upon as referee by stipulation between the parties,) to ascertain and report upon the question whether the plaintiffs have a perfect title, and can make such title to the defendants. If the title is found perfect the defendants are to pay the purchase money with the interest

Viele *v.* Troy and Boston R. R. Co.

from 3d February, 1851, and take the conveyance within thirty days.   Neither party to have costs against the other unless the plaintiffs are unable to make a good and perfect title, in which event the complaint is to be dismissed, with costs to be paid to the defendants.   It then proceeds as follows : " And it is therefore ordered, adjudged and determined, that if the above provisions are complied with, and the said title to be made and delivered to the defendants be reported by the referee to be good and perfect, provided that such reference be demanded by the said defendants, that the said plaintiffs do recover of the said defendants, $2850, and interest thereon from 3d February, 1851, and that the defendants take the conveyance of the said premises on payment of said sum, amounting to $3290.12." To the judgment was annexed a stipulation of the attorneys, nominating and appointing Judge Hunt as referee, to hear, determine and report the matters and things referred to and required in the above judgment.   This judgment was filed 19th April, 1853.

The defendants appealed from the judgment, and gave notice that in case of the affirmance of it, or any part thereof, they would avail themselves of the order of reference contained in it.

*J. Pierson*, for the plaintiffs.

*J. K. Porter*, for the defendants.

*By the Court*, WRIGHT, J.   Being unable to agree for the purchase of real estate from the plaintiffs, required for the purposes of the defendants' incorporation, and instead of instituting the proceedings prescribed by the rail road act to acquire title, the parties mutually agreed to submit the question to three persons to determine the amount of compensation to be made to the plaintiffs.   As no title could be acquired by the award of the arbitrators, it was further agreed, that they should notify the respective parties of their determination within a specified time, and that within ten days after the receipt of such notice, the plaintiffs should execute and deliver to the defendants a good and valid deed of conveyance of the lands taken for the purposes

of the road, thereby conveying them by a title free from incum-brances. At the delivery of such conveyance the rail road company was to pay the amount of compensation ascertained and determined by the arbitrators, or any two of them.

Less than three acres of the plaintiffs' lands were taken from a farm of some 150 acres, at its maximum value worth $60 per acre. Two of the arbitrators (or appraisers as they are called in the agreement) signed an award fixing the compensation to be paid for the three acres, at $2850. The parties were notified of the award on the 24th of January, 1851. On the 3d of February following, the plaintiffs tendered a deed of the lands taken. There was no objection made to the form of the conveyance. It contained a covenant that the premises were free from incum-brances. The secretary and treasurer of the company declined to accept the deed and pay the money, assigning as a reason that he had no authority to pay without an order from the pres-ident, and he was absent. At this time there was a mortgage upon the premises, given in July, 1839, to the loan commission-ers of the county of Rensselaer, on which there was due the sum of $350. This mortgage was discharged on the 11th of Febru-ary, 1851, eighteen days after notice of the award. There was also upon the record, unsatisfied, another mortgage for $1500 against one of the plaintiffs, but whether it covered the lands taken the case does not show. On the return of the president the deed was tendered to him. It was left at the office of the company, and subsequently referred to their attorney, who re-ported that the property was incumbered. One of the directors of the company retained the deed, but neither the reason that it was tendered more than ten days after notice of the award, or that the property embraced in it was incumbered appear to have been given. No tender of deed and demand of money was proved to have been made after the satisfaction of the loan commission-ers' mortgage and before the action was brought. The company, at the time of the trial, were using the land for their road. They had taken possession prior to the award. Just previous to the award one of the plaintiffs forbade the workmen going on to the land until he got his pay. They ceased their opera-

tions until after the award, and then resumed them. In the summer of 1851, the plaintiffs brought this action, asking for a specific performance of the agreement, and that the defendants accept the deed tendered, and pay to them the sum awarded, with interest thereon from the date and notice of the award.

The only issues tendered by the defendants' answer were that the award was procured by fraud; that there was partiality and corruption in two of the arbitrators; that they based their determination on impertinent and incompetent evidence; and that at no time within ten days after notice of the award, were the premises free from incumbrances. The action is therefore in form for a specific performance of the contract of January, 1851. Instead of treating that instrument as a submission, and bringing their action to recover the sum awarded, the plaintiffs have chosen to treat it as a contract for the sale of lands, the purchase price to be determined by individuals chosen and named by the parties. This they may do. They may insist upon a specific performance of the contract, provided a case is made for equitable interference. When an agreement in relation to real estate is in its nature and circumstances unobjectionable, and the contract is in writing, is certain, and fair in all its parts, is for an adequate consideration, and capable of being performed, it is as much a matter of course for a court of equity to decree a specific performance, as for a court of law to give damages for a breach of it. Indeed, the cases are numerous where equity has enforced contracts for the breach of which no action for damages could be maintained at law. The case of *Seymour* v. *Delancy*, (3 *Cowen*, 445,) which the learned judge who tried the cause seems to have had in his mind, is in point. In that case the vendor's remedy at law was gone, by reason of there being a mortgage on the estate, so that he could not convey a good title at the day fixed upon by the contract, yet a bill for specific performance was sustained. In equity, the leading inquiry is, whether *in conscience* the contract should be enforced; and mere technical objections that would defeat on action at law for damages are not allowed to produce inequitable and oppressive results. Time is not in general the essence of the contract. If

it be conscientious that the agreement should be performed, though the action be lost at law, by the default of the very party seeking a specific performance, it will notwithstanding be decreed. Yet the parties may make time the essence of the contract, and in such case a court of equity will not relieve the party in default.

The contract in this case provided that within ten days after notice of the award, the plaintiffs were to convey the premises, free from incumbrances, and the defendants to pay the sum awarded. The counsel for the defendants misapprehends the agreement in supposing that the delivery of the deed was made a condition precedent to the payment of the purchase money, or sum awarded. They were to be simultaneous acts. It was as much the duty of the defendants to pay at the time stipulated, as of the plaintiffs to convey. Neither party could sue at law, without the tender of a deed by the one party, or of the purchase money by the other. The provision for a conveyance of the premises free from incumbrances was not an express condition precedent to be performed within the period of ten days after notice of the award, else the contract should be at an end, and the defendants relieved from payment. It was not the under- · standing of the parties that after the amount of the purchase money had been ascertained, and notice thereof given, within ten days thereafter the plaintiffs should convey a perfect title, or making default, the agreement to be void. The defendants had taken possession of the premises prior to the award, and at the expiration of the ten days were using, and still continue to use them. There is nothing, therefore, in the contract, or the circumstances surrounding the case, showing that the parties had made time any part of the essence of the contract. The defendants could lose nothing by extending the time for the plaintiffs to convey a perfect title beyond the period of ten days, as they were in the possession and use of the premises, and could not be called on to pay the award unless such perfect title were made. Within the ten days the defendants might have tendered the purchase money and demanded a deed, and in default of the plaintiffs, have sued at law. So, also, the plaintiffs having ten-

dered a deed conveying a perfect title, in default of payment might have maintained their action at law. As neither party has put the other in default, and the time has elapsed, it is probable that the remedy of both, at law, for a breach of the contract, is gone. Either party may, however, go into equity, for a specific performance, and make the offer incumbent on him, in the complaint; and the failure to make a tender before the commencement of the suit would only affect the question of costs. (12 *Vesey*, 25.) In general, and where lapse of time is not essential to the substance of the contract, it is not necessary for the plaintiff to show that he was able to give a good title at the time of making the agreement to sell, or even at the commencement of the suit. It will be sufficient if he can give a perfect title at the time of the decree, or at the time when the master makes his report. (5 *Paige,* 241.) In *Seymour* v. *Delancy*, (3 *Cowen*, 445,) the plaintiff had covenanted that he would convey to the defendant certain premises on or before the 1st June, 1820, with a stipulation that the defendant might enter into immediate possession of the premises, which he accordingly did. On the 1st June there was a mortgage on the premises which remained unpaid until a short time previous to filing the bill, in March, 1821. The plaintiff executed no conveyance of the title on the 1st June, neither could he make perfect title, as the property was incumbered by the mortgage. Suydam, senator, who delivered the prevailing opinion, said: "In the case of a specific performance it is the usual course of the court to refer the inquiry as to title to a master. In my judgment this inquiry extends not only to the actual title, but to incumbrances upon the property. In fact the master is to inquire whether the party can make a deed according to his contract. If he can, it is sufficient, although he was not in a situation to do so when he entered into the contract, or at the time for performance; though it might be otherwise where one party had been quickened by the other, or when time is of the essence of the contract, as where it relates to stocks or other personal chattels. The appellant's remedy is lost at law, because the property was covered by a mortgage. But that is no objection in a court of equity. It is

the peculiar privilege of courts of equity to interfere where the remedy is defective at law, if it be not against conscience : and if a contract be fair it should be enforced." Savage, C. J., who was for affirming the decree of the chancellor dismissing the bill, said : " Although lapse of time, when not of the essence of the contract, or an incapacity to make title on the day stipulated, are not insuperable obstacles in the way of obtaining the specific execution of a contract, provided title can be made before the decree ; yet when connected with inadequacy of price, they will justify the court in withholding the exercise of its extraordinary powers in compelling a specific performance." The court of errors reversed the decision of the chancellor, and ordered that a master inquire whether the appellant had, and could give, a good title to the premises which he had agreed to convey, and if the chancellor, upon the coming in of his report, should be of the opinion that such title could be given, that a proper decree be made for the specific performance of the contract. In the present case the parties had contracted for the sale of certain lands to be used for the purposes of the rail road company, and instead of fixing the price themselves that question was agreed to be left to three persons chosen by the parties. The plaintiffs were to convey a perfect title to the premises, and the defendants to pay the award or purchase money within ten days after notice of the award. Within the ten days the plaintiffs tendered a deed, properly executed. No objection was made on the ground of a defective title. Shortly afterwards the deed was again tendered to the president of the company. He raised no objection that the tender came too late, or that the title was defective, upon the ground that there were incumbrances upon the property. The deed was subsequently returned to the plaintiffs, without any specific reason being assigned; but the defendants continued in the possession and use of the property. The defendants did nothing which looked like an abandonment of the contract; or evinced by word or act an intention to question the plaintiffs' right to a performance, or to hold them to furnishing a perfect title within ten days after notice of the award. Indeed these acts amounted to a waiver of the condition to

Viele *v.* Troy and Boston R. R. Co.

convey a perfect title within ten days after notice of the sum of the purchase money awarded to be paid.    It seems, however, that though the deed tendered within the ten days contained a covenant against incumbrances, there was a small mortgage existing and unpaid at the time of the tender, on the whole farm of 150 acres.    This was paid some eighteen days after the award, and prior to the commencement of the suit.    For any thing that appears in the case, when the suit was commenced the plaintiffs were able to give a perfect title.    The only ground of the defendants, as respects this branch of the case, was that the plaintiffs had shown, themselves, that it was not in their power to convey the premises free from incumbrances, within ten days after notice of the award, and as it was of the essence of the contract, and a condition precedent to the payment of the purchase money, that a perfect title should be furnished within ten days after notice of the award, equity could not enforce a specific execution of the contract.    The learned judge holding the circuit thought otherwise ; and in this we are of the opinion there was no error.    The parties had not made time the essence of the contract, nor was lapse of time in furnishing a perfect title essential to its substance.    The defendants had waived or acquiesced in the default, if default it may be called, in not conveying a title to the premises, free of incumbrances, on or before the 1st of February, 1851.    Indeed, (regarding this as the only point in the case,) the proof would have justified a judgment for a specific performance, without a reference, as was had in *Seymour* v. *Delancy*, to ascertain whether the plaintiff could give a perfect title.    But for greater caution the judge chose to follow the practice in that case, (if the defendants required it,) and ordered the question to be referred to a person to be named in the judgment, to ascertain and report upon the title, and if it should prove defective, and should not be made perfect, then the complaint was to be dismissed.    There was nothing, therefore, in the omission to make perfect title on or before the 1st February, 1851, to prevent a court of equity from decreeing a specific performance of the contract, provided it could be made, at the time of the decree.

Whether a court of equity shall decree the specific perform-ance of an agreement, or not, is a matter resting in its discre-tion; but this is a sound legal discretion. It will not lend its aid to enforce an unconscientious contract. The case presented must be fair, just and reasonable; the contract free from fraud, misrepresentation or surprise; and not hard, unconscionable or unequal. It must also be entered into upon adequate considera-tion; and where the inadequacy of price in a contract to sell, is so great as to be conclusive evidence of fraud, as where it would shock the moral sense of an indifferent man, a court of equity should not carry it into effect. But inadequacy of price merely, without being such as to prove fraud conclusively, the contract being entered into deliberately, and fair in all its parts, is not an objection to its being executed. In this case it cannot be pretended that the contract entered into was hard, unconscion-able or unequal; nor does the proof show misrepresentation or surprise on the part of either of the parties entering into it. If there was any fraud in the case it is to be inferred from the inadequacy of price. The contract was entered into deliberately, and was fair in all its parts. The consideration to be paid for the land was not definitely fixed in the contract, but the sum submitted to men indifferently chosen by the parties. A ma-jority of those men fixed the price to be paid for the land, and that sum is to be regarded and treated as the consideration, as though it were named in the agreement. It seems a dispropor-tionate compensation for less than three acres of land, taken from a farm of 150 acres, the maximum value of the whole of which was about $9000. But is there enough in the case to show that the price was so inadequate as to shock the moral sense, and be conclusive evidence of fraud? All that we have is that the price for $2\frac{92}{100}$ acres of land from the plaintiffs' farm was fixed at $2850, and that one of the appraisers expressed an eagerness to make the defendants pay all that the land was worth, and more if he could do it conscientiously. We have no evidence as to what part of the farm was taken, whether it in-cluded in it or was contiguous to any buildings, or how it affect-ed the value of the remainder of the farm. It might be that the

road as located ran through valuable buildings of the plaintiffs, or cut up and divided the farm in such a way as to reduce its aggregate value one third. We cannot say that, under these circumstances, the price is so inadequate as to establish fraud conclusively, and preclude the plaintiffs from a specific performance. We may surmise from the disproportion between the value of the whole farm, and the price fixed as the consideration for the small part in acres taken for the purposes of the road, that the defendants were made to pay pretty dearly, but the price does not shock the moral sense, as it may be that that part of the farm taken was worth the sum of the appraisal. On this subject there was a palpable defect of proof, and the court would not have been legally justified in denying relief on the ground of inadequacy of price.

The defendants offered to prove that the appraisers, in determining the sum to be paid as a compensation for the land taken, received proof or representations from one of the plaintiffs of expenses incurred by him in attending the legislature as a lobby agent, and that they actually allowed some $80 on that account in the award, and allowed the further sum of $500 to indemnify the plaintiffs against the chance that at some future day they might lose the life of a son or child by the engine. This proof was excluded by the judge. It is difficult to perceive the pertinency of this proof in an action to enforce the specific performance of a contract. It would not have risen to the dignity of pertinent evidence had it been offered on direct proceedings to set aside an appraisal, on the ground of partiality, corruption or misconduct of the arbitrators. Arbitrators are judges of the parties choosing, and their determination is generally final and conclusive, Their award may be vitiated in a court of equity, for partiality or corruption in either of them ; but it is no ground for setting it aside that they erred in receiving impertinent and incompetent evidence. If they refuse to hear pertinent and material evidence, and thus avail themselves of the only means— the testimony of witnesses—to arrive at an honest and conscientious result, equity will set aside their award. But, says Chief Justice Spencer, in *Van Cortlandt* v. *Underhill*, (17 *John.*

405,) "if arbitrators hear the evidence offered to them, and make up their award with such lights as the parties afford them, their award in estimating damages or in the value of property will not be set aside, unless their estimates are so enormously disproportioned to the case proved as to strike every one that there must have been corruption or partiality:" The tendency of the proof offered was to show that the arbitrators received incompetent evidence, for aught that appears without objection, and acted upon it in estimating the plaintiffs' damages. It did not however legitimately tend to show that partiality or corruption on the part of either of the arbitrators, which should have led a court of equity, on direct proceedings, to set aside their award. They may have received improper evidence, or erred in judgment in estimating the plaintiffs' damages—it may be, that their estimation to some extent was based on erroneous principles—but this does not tend to show such partiality or corruption as should vitiate an award deliberately made by them. But this was not an action or cross action to set aside the award of arbitrators on the ground of partiality or corruption. It was for the specific performance of a contract, in which in no possible view could the fact that arbitrators chosen by the parties had received and acted upon incompetent evidence, have been pertinent proof. The judge did not err in keeping this irrelevant issue out of the case.

The court decided that the plaintiffs were entitled to interest on the award or purchase money from the 3d February, 1851, the day on which the deed of the premises was tendered. The defendants were in the possession and use of the premises, and the parties by their contract had fixed upon that time for the payment of the purchase money. The purchase money was neither paid nor tendered. The defendants had not demanded a deed, and thereby put the plaintiffs in default. We think that interest was rightly allowed, from the time fixed in the contract for the payment of the purchase money, provided there was to be a judgment at all for a specific performance.

We have chosen to look into the merits of this case, though no exception appears to have been taken to the decision of the

Viele *v.* Troy and Boston R. R. Co.

judge, and the judgment appealed from was consented to and entered by stipulation of the attorneys of the respective parties. The code provides that when a trial is had by the court, for the purposes of an appeal either party may except to a decision on a matter of law arising upon such trial, within ten days after notice in writing of the judgment, and with the same effect as upon a trial by jury. (*Code*, § 268.) The defendants did not except to the decision of the judge, and the parties agreed upon the judgment to be entered, and the referee to report upon the question of title. The judgment entered was not final in its character. It contained a provision for reference as to title, and in the notice of appeal the right was reserved by the defendants, in case of the affirmance of the judgment or any part thereof, to avail themselves of the order of reference contained in the judgment. It is questionable whether, under these circumstances, the defendants could properly appeal; and whether after consenting to the judgment, they have any remedy left but an appeal from the order confirming the report of the referee to whom they have referred the question of title. But we have not chosen to rest the cause upon this technical ground.

Judgment of the circuit court affirmed.

[ALBANY GENERAL TERM, September 3, 1855. *Harris, Wright* and *Watson,* Justices.]