## CLEVELAND *vs.* BURRILL.

A court of equity may compel a purchaser of lands specifically to perform his contract of purchase, although the lands are situated abroad, and the contract was made, and was to have been performed, abroad, and the plaintiff, the vendor, is a non-resident; the defendant being duly served with process, and subjected to the jurisdiction.

Where a purchaser of lands has entered into possession, and received the rents and profits, in an action for a specific performance, he will be required to pay interest on the purchase money, if the vendor is not in fault for the delay.

THIS was an action for the specific performance of a contract made in the state of New Jersey, for the purchase, by the defendant, of lands lying there, the defendant being a resident of that state, and the plaintiff a non-resident of this state. The cause was tried before the court without a jury.

*A. Green,* for the plaintiff.

*D. Marvin,* for the defendant.

BIRDSEYE, J. This is an action by the vendor of lands, against the vendee, to compel a specific performance by the defendant of his contract of purchase. The lands are situate in New Jersey; the contract was made there, and was to have been performed there. The plaintiff resided in that state when the contract was entered into; and is still a non-resident of this state.

It is strongly insisted, for the defendant, that this court cannot compel the defendant specifically to perform such a contract, and that no precedent can be found where a specific performance has been decreed under such circumstances. It might be sufficient, in answer to this position, to ask where the action can be maintained, if not here. The defendant is here; is served with process and duly brought into court. His property, which is sought to be reached, is here also. It does not appear that he has any property, or can be served with process, in any other jurisdiction. So that if this court cannot entertain this action, no other court may be able to do so;

Cleveland *v.* Burrill.

and thus there may be an entire failure of justice, except in so far as an action at law for damages could be relied on to afford redress.

I have not thought it necessary to examine particularly all the cases cited by the learned counsel for the defendant. It is probably true, as he asserts, that no case is reported in which the foreign vendor has pursued the vendee to his own domicil, and made him perform a foreign contract for lands situate abroad. There are, however, many expressions of opinion throughout the books in favor of the maintenance of such an action. One of them may be found in *Ward* v. *Arredondo,* (*Hopkins,* 223,) where the chancellor supposes a case precisely like the present, and says that if the foreign vendors were seeking to enforce payment from the vendee, they might do so ; that the vendee " is here, and is subject to a decree, and perfect justice might be done."

It is admitted, on the part of the defendant, that many adjudged cases, and many elementary writers of authority, lay down principles broad enough to cover this case, when they say that a court of equity may decree the specific performance of a contract for the sale of lands in a foreign state, and may compel a conveyance of the land, where the person of the defendant is within the reach of its process. (*See* 2 *Story's Eq. Jur.* §§ 743, 4, *&c.* ; *Mead* v. *Merritt,* 2 *Paige,* 402 ; *Mitchell* v. *Bunch, Id.* 606 ; *Sutphen* v. *Fowler,* 9 *id.* 280 ; *Massie* v. *Watts,* 6 *Cranch,* 148 ; *De Klyn* v. *Watkins,* 3 *Sandf. Ch.* 185 ; *Newton* v. *Bronson,* 3 *Kernan,* 587.) But it is alleged that however broadly the principle to be deduced from the cases may be laid down, it must be limited to cases where the bill is filed by the vendee, and the vendor who is required to convey is within the jurisdiction.

I see no reason, however, for thus restricting the application of this principle. On the contrary, the jurisdiction of this court over a case like the present seems to me so clear and unquestionable, that authorities are scarcely needed to support it. And the absence of adjudications is rather to be attributed to the fact that such a position is too unsound to have been before

taken. The case made is, shortly, this: On the 12th day of May, 1854, the defendant covenanted with the plaintiff, to pay him $3000 in cash, on the 11th of July then next, and to give security for the payment of $5000 in two years from that date, upon the performance of certain conditions by the plaintiff. The plaintiff was ready and offered to perform those conditions, in precise accordance with the terms of the agreement, but was prevented by the absence and failure of the defendant. Similar offers of performance have since been repeatedly made to the defendant, and refused by him. The contract of the defendant is thus broken. He may be compelled to make it good, before any court of competent powers, within whose jurisdiction he may be found. This suit is brought to compel him thus to make it good. In substance, the defendant is only called on to pay the moneys he agreed to pay, together with such damages as have naturally resulted from his breach of the contract. It is a suit for the recovery of money due upon a contract. The subject matter of the action, therefore, if it have one distinct from the contract on which the suit is brought, is the money of the defendant sought to be reached by the judgment. The defendant is a resident of this state. All his property is here, or may be reached and controlled by this court, by its control over his person. The court has complete jurisdiction of his person, and may compel him to do justice by applying his property to satisfy the just claim of the plaintiff.

The plaintiff, however, instead of merely seeking compensation in damages for the defendant's breach of this agreement, offers now to perform the contract on his part, upon the defendant's performing his portion of it. He offers to complete the conveyance of the lands, at the time he receives, under the judgment in this case, the money of the defendant, for the recovery of which the suit is brought.

None of the objections urged by the defendant's counsel seems to me to have any weight. The non-residence of the plaintiff is not material to the maintenance of the action. He has submitted himself to the jurisdiction of the court by becoming a suitor before it. He is amenable to its process, and must obey its

Cleveland v. Burrill.

commands, before he can obtain relief. He has in fact attended and been examined as a witness for the defendant at the trial. If conditions are attached to the relief awarded him, then performance by him can be compelled.

That the contract sought to be enforced was made in a foreign jurisdiction, is also immaterial. It binds the defendant, wherever he may be. His duty to fulfill it is the same every where. He cannot relieve his conscience of the obligation which his contract has imposed on it, merely by departing from the territory within which it was made. Even if the lands contracted to be conveyed to him are to be considered as the real subject matter of the action, the fact that they are situated abroad cannot deprive this court of its jurisdiction. If the defendant could, as is admitted, be required to convey lands situate abroad, he may be required, (if that is necessary,) to *receive* a deed for lands thus situate. In other words, the plaintiff may be compelled to tender him such a deed. Such a deed has been executed, and is now in the hands of the court, ready for delivery to the defendant, as soon as he shall entitle himself to it by performance.

The utmost that can be contended for here, is that before the plaintiff can have the relief prayed for, the title to the lands in question may have to be passed upon, and so may be affected by the judgment. The case is thus brought directly within the principle laid down in *De Klyn* v. *Watkins*, (3 *Sand. Ch. R.* 185,) that the jurisdiction of a court of equity, in a case of fraud, of trust and of contract, is sustainable wherever the *person* sought to be affected is found; although land not within the jurisdiction of the court, may be affected by the decree. Neither that case, nor any other authority defines the manner or limits the extent, to which the lands may be thus affected. In some instances, the party holding the title has been compelled to convey, in execution of his contract. This is the common case, as illustrated by *Sutphen* v. *Fowler*, (9 *Paige*, 286 ;) and *Newton* v. *Bronson*, (3 *Kernan*, 587,) and kindred authorities. In others, as *De Klyn* v. *Watkins*, an alleged conveyance has been declared fraudulent ; or a charge on lands has been set aside, and a reconveyance or release directed, as in *Arglosse* v. *Mus-*

*champ*, (1 *Vern.* 75, 135;) or an absolute purchase of foreign land under the judgment of the court of the country, has been held to be only a security for the debt, and a redemption from it has been allowed, as in *Lord Cranstown* v. *Johnson*, (3 *Vesey, jun.* 170;) or a redemption has been decreed from a mortgage upon lands abroad, and the mortgagee restrained from proceeding to foreclose his mortgage, in the jurisdiction, as in *Beckford* v. *Kemble*, (1 *Sim. & Stu.* 15;) or the party holding the legal title to the land has been adjudged to hold it as the trustee for the person having the equitable title to it, as in *Massie* v. *Watts*, (6 *Cranch*, 148.) In still another case, *Ward* v. *Arredondo*, (*Hopkins*, 213,) though the lands were situate abroad, and the contract was made abroad, and the vendors were and had always been abroad, the action was held to lie, merely on the ground that the vendors in Havana had sent here a deed, for delivery on payment of the amount they claimed to be due, which deed was in the hands of their agent, the other defendant. The chancellor said that the deed was here, subject to our jurisdiction; and it was such a portion of the subject in question that by acting upon it the court might decide the controversy and do complete justice between the parties. He stated, and in my view, correctly stated, that the elementary principle is that jurisdiction may be upheld, wherever the parties, or the subject, or such a portion of the subject, are within the jurisdiction, that an effectual decree can be made and enforced, so as to do justice between the parties.

That this principle will cover the present case, is obvious. But the defendant insists that a specific performance is always within the discretion of the court, and will not be granted unless the party compelled to perform will get a good title, or a fair equivalent for what he parts with; that the plaintiff's title here has not been shown, but on the contrary, is put in issue; and that, the land being in a foreign state, there is no method of ascertaining whether the title is good or bad. There are several answers to this position. An interval of about two months elapsed between the date of the contract and the time fixed for performance, during which, if any objection to the title existed,

Cleveland *v.* Burrill.

it might have been discovered and pointed out. The plaintiff is shown, by the defendant's own evidence, to have been for twelve years in possession of these premises. He put the defendant into possession, under the contract of purchase, &c., and the defendant, for aught that appears, still has undisturbed possession. When the deed was tendered and he was requested to perform, he made no objection to the title, but placed his refusal on entirely different grounds. Even now, he does not point out any defect, or allege that any exists. He contents himself with denying any knowledge or information sufficient to form a belief, whether the plaintiff has a good title. A purchaser under such circumstances as these, has no right to be ignorant on this point. A prudent man, immediately on entering into such a contract, would have investigated the title. The defendant ought not to be allowed to let the time for performance go by, to enter into possession, and hold for months and years, and when finally sued for the purchase price, to aver ignorance of the state of the title. He cannot thus throw the burden of examining the title, either on the plaintiff or the court; but should satisfy himself in regard to it, and point out the specific objections to it which exist. If defects in it did once exist, the plaintiff was entitled to reasonable notice of them, and to a sufficient time to remove them. And if they are removed at any time before judgment, or the master's report upon the title, it is sufficient, and performance will be decreed. (*See* 17 *Wend.* 376 ; 21 *id.* 639 ; 8 *Paige,* 600 ; 7 *id.* 85 ; 5 *id.* 241 ; 3 *Cowen,* 519, 520, 535 ; 21 *Barb.* 381, 392.)

If it becomes necessary to examine the state of the title, the further objection urged by the defendant, that the validity of the title depends on the law of a foreign state and can only be decided there, is by no means conclusive in his favor. The common objections to a title, of incumbrances by mortgage, judgment, &c., present simple questions of fact which may be tried as easily as any other facts. Difficult questions of law may possibly arise, which would, perhaps, afford ground for refusing the assistance of this court to direct a performance. But such cases must be very rare indeed. Ordinarily, the validity of a

title to lands in a sister state may be examined and established here, to the entire satisfaction of all concerned. To make such an examination is by no means an unusual part of the profes·sional duty of an attorney resident here.

To the further suggestion of the defendant's counsel, that if the court in this instance undertakes to pass upon the title to lands in New Jersey, it may next be required to examine a title to lands in Italy, Turkey or China, it is sufficient to reply, that when such a case arises, it will, no doubt, be properly disposed of. That such a question of title may be imagined as would prevent the exercise of jurisdiction in a case like the present, is no reason why the court should shrink from discharging its duty here.

If the defendant can succeed ·in throwing any doubts upon the plaintiff's title to the lands in question, I doubt not they can be examined and dispelled in this suit. · And if they prove too grave for us, the defendant will be fully protected, if he is allowed leave to show that fact to the court, and thereupon to ask to be relieved on just terms from completing the performance of the contract.

There must, therefore, be judgment for the plaintiff, that, upon another tender of the deed heretofore tendered to him, the defendant pay to the plaintiff the sums specified in the contract of sale. As the defendant has been in possession of the premises, since a date prior to that fixed on for the conveyance, he must pay interest. (21 *Barb.* 396. 18 *Eng. L. and E. R.* 16.) Such interest to be at the rate of six per cent per annum; that being the rate fixed in the contract and which is allowed by the laws of New Jersey.

As the plaintiff has fully performed the contract on his part, which the defendant has violated without any just excuse, the plaintiff is entitled to the costs of this suit, and to the damages which he has sustained by reason of the defendant's failure to perform. These damages will consist of such sums as the plaintiff has been compelled to pay since July 11, 1854, on the mortgages then existing on the lands, and subject to which the defendant was to take them, and also of the interest which

the plaintiff might have received on the moneys to have been paid him by the defendant.  An account must be taken of the interest due to the plaintiff, on the $8000 of purchase money, and of the sums paid for interest on the previous incumbrances, and in stating the account, semi-annual rests are to be made, and interest allowed to the plaintiff, on each item of interest falling due to, or advanced by, the plaintiff.

But if within twenty days after the service of this judgment upon his attorneys, the defendant shall give notice to the plaintiff's attorneys of any defect in the plaintiff's title to the lands in question, and the same is not removed within ten days thereafter, or is denied by the plaintiff to constitute a valid objection to the title, the defendant may within five days thereafter give notice of a motion at special term for a reference to inquire whether the plaintiff is able to give a good title to the lands.    The entry of final judgment is stayed till the time for giving such notice of motion has elapsed, or, if given, till the motion is decided.

[KINGS SPECIAL TERM, November 2, 1857.  *Birdseye*, Justice.]