By the Court. Sandford, J.
There is no difficulty as to the amount of the rent reserved by the agreement of February 18th, 1846. Although it speaks of the within lease, and that made in the preceding year was not within the paper, but was indorsed upon it; the whole instrument shows that both were referred to. The lease was to be extended ; which language was appropriate only to an existing lease. If the first lease alone had been in view, the expression would have been “ revived,” or something equivalent. The existing lease which was to be extended, consisted of the two instruments of March, 1844, andjSeptember, 1845, the one within and the other upon the paper, on which the agreement in question was written. And a reference in the latter, either to the one or the other, describing it as an existing lease, would necessarily embrace both.
Next, in reference to the principal ground of defence. It is not denied on the part of the plaintiff, that he was liable to the defendant for damageis, if the painting of the house were done with as bad materials, and with such needless and harassing *125 delay, as are stated in the notice. And it is very certain, that the injury as set forth, was one of a serious character. The question is, whether the defendant has any remedy in this action, by way of reducing the amount of the rent due on his lease.
The doctrine of recoupment ■ of damages, on which the defendant relies, was firmly established, by the name of mitigation of damages, or diminution of the plaintiff’s recovery, in Reab v. McAlister, (8 Wend. 109;) and in cases falling within its principle, is entitled to the favorable consideration of the courts. Without citing the subsequent cases, we may say, that it has been applied to the reduction of the price of goods sold, where there was either a warranty broken, or fraud in the sale, or a distinct agreement relative to the subject matter, which was broken; to diminish the recovery on a contract for labor and materials, which was not executed faithfully; and finally, a tenant’s damages by reason of the breach of an agreement to repair, have been admitted in his defence to an action brought by the landlord to recover the rent of demised premises. In Ives v. Van Epps, (22 Wend. 155,) Cowen, J., with whom this was a favorite doctrine, cited Tomlins’s definition of recoupment, and said, “ It is now uniformly applied where a man brings an action for breach of a contract between him and the defendant; and the latter can show that some stipulation in the same contract was made by the plaintiff, which he has violated. There,” he says, “ the defendant may, if he choose, instead of suing in his turn, recoupe his damages arising from the breach committed by the plaintiff, whether they be liquidated or not. The law will cut off so much of the plaintiff’s claim, as the cross damages may come to.”
The defendant supposes that the doctrine has been carried still further, in the case of Batterman v. Pierce, (3 Hill, 171.) It is true, Judge Bronson there says, that “ Where the demands of both parties spring out of the same contract or transaction, the defendant may recoupe, although the damages on both sides are unliquidated,” &c. But the case itself, was an action on a note given for wood sold, and the defence was on an agreement of the seller, forming a part of the contract of sale. *126 Indeed, the whole of the learned judge’s opinion, shows that he uséd the word “transaction,” as denoting the whole of a contract and its accessories, whether resting in one or more writings, or having mutual or independent stipulations. We do not find any decision going the length of the defence proposed in the case at bar; and we aré unable to bring it within the principle of recoupment. The damages claimed to be recouped, do not arise out of the contract between.the parties. They were occasioned by a tortious act of the plaintiff’s agents; of the same quality as a trespass, although unaccompanied with any force. The acts complained of, are entirely independent of the respective covenants of the parties ; as much so, as a trespass or other act of force committed by a landlord, or even by a stranger, upon the tenant. The circumstance that the plaintiff was authorized to enter the premises and make repairs, is to be left out of view, inasmuch as it does not justify the wrong alleged. Those wrongful acts, therefore, stand as unjustifiable injuries to the defendant’s possession of the demised premises, committed during the term and long after the contract of letting. We do not perceive how they can be regarded as growing out of that contract, or even out of the same transaction, in the sense in which Judge Bronson made use of that word.
Let us suppose that an action is brought for the price of a horse, and the defendant should plead, that the next week after the sale, the plaintiff without permission, took the horse out of the defendant’s stable, drove him out of town, and foundered him. Would such a plea be maintained, either as an entire defence, or by way of recoupment ? Yet it appears to us, that the foundering of the horse in the case put, is no more remote from the contract or transaction of the sale, than is the tortious behavior of the plaintiff’s servants from that of the lease, in the case before us.
As to the argument, that the testimony offered would prove an éviction, it is evidently an afterthought. The notice does not allege any thing of the kind. It proceeds expressly for a recoupment of damages ; and the facts stated, taken in connection with the defendant’s continuance in possession for more *127 than a year after they occurred, would not support a plea oí eviction, if it had been pleaded in form.