By the Court. Vanderpoel, J.
The principal questions are, whether the judge submitted the proper rule of damages to the jury, and whether he properly rejected the evidence offered by the defendant, that there was a usage of trade in flour contracts for the delivery of flour at a future day, to deliver other brands of flour of equal quality.
The rule of damages, as laid down by the Chief Justice at the trial was, the difference between the market value of the flour on the thirtieth of June, and the contract price, with interest on such difference. This is the true rule. (Clark v. Pinney, 7 Cowen, 681; Dey v. Dox, 9 Wend. 129; Davis v. Shields, 24 Wend. 322.) In all those cases, it was held, that when there is a default in the vendor in a "contract to sell and deliver chattels, the measure of damages in an action by the vendee is, the difference between the contract price and the market value of the chattels when they should have been delivered by the contract. The reason of the rule, says Nelson, J. in Dey v. Dox, is conclusive, to wit, that such damages, added to the contract price which the vendee has not parted with, will enable him to buy the article in the market. Why should a different rule be applied in this case. It is said that this was not a contract for a specific marked number of barrels of flour; that the spirit of the contract would have been satisfied by the delivery of other flour of equal quality; and that the judge improperly rejected the evidence offered to show that at the time of the maturity of the contract, Clark and Coleman of *130 fered to deliver other brands of flour of equal or better quality. This evidence was not admissible, unless the usage of trade is potent and authoritative enough, in a case like this, to justify the delivery of other brands than those contracted for. The rule which forbids the admission of parol evidence to contradict or vary a written contract, is not infringed by any evidence of usage respecting the subject to which the contract relates. (1 Greenleaf’s Ev. § 292.) Proof of usage is admitted, either to interpret the meaning of the language of the contract, or to ascertain the nature and extent of the contract, in the absence of express stipulations, and where the meaning is equivocal and obscure. (Ibid.; 2 Sumn. R. 569; Cutter v. Powell, 6 T. R. 320 ; Vallance v. Dewar, 1 Camp. 503; Noble v. Kennaway, 2 Doug. 510.) There is nothing equivocal in this contract; nothing to require the aid of any usage, or mercantile understanding, to ascertain the meaning of any of its terms or phrases. We took occasion, in the case of Hone v. The Mutual Safety Insurance Co., (1 Sandf. 137;) to express our repugnance to the practice of setting up particular usages or customs, to control the liabilities of parties under the common law, and our entire concurrence in the doctrine of Justice Story, so clearly laid down and so forcibly expounded by him in the case of the Schooner Reeside, 2 Sumn. 567. We cannot recognize a usage which will authorize a party to deliver one article in fulfilment of a contract, positively to deliver another ; which will justify him in delivering the fabrics of one mill or manufactory, when he has expressly contracted to deliver those of another. The injustice of such a rule is rendered manifest by the evidence in this case. It is proved, that when the supply of flour is small, a particular brand will often maintain its price, in the face of a general fall of one dollar per barrel. Suffice it to say, that one of the contracting parties wants a partictilar brand, and the other agrees to deliver it to him ; and it is not in law or sound reason a good answer for the vendor to say, “ I offered you not the article I contracted to deliver, but one just as good.” The vendee may, at the time of the contract, have the most conclusive reasons for contracting for that particular brand, and wé cannot on any sound principle hold the contract satisfied by *131 the tender of another, which the witnesses may deem equally good.
Nor, do we deem the point well taken, that the judge improperly rejected the evidence offered, that there was no other kind of Rochester City Mills flour, than superfine Rochester City Mills flour. We cannot conceive, how it could, legitimately, have influenced or varied the natural import or meaning of the contract. The verdict is larger than we would have found, had we been in the place of the jury; but we have not been able to conclude that the damages are so excessive as to warrant our interference on that ground.
The motion for a new trial is, therefore, denied.