## BRIDGES & *als.* *versus* STICKNEY.

The damages recoverable in an action for the breach of a contract, are limited to such as are the immediate and necessary result of such breach.

No damages can be claimed for the loss of a contract collateral to the one broken.

If, in a contract with defendant, another contract of the plaintiffs with a third person *is recited*, and to enable the plaintiffs to execute it, the agreement of the defendant to furnish certain supplies was made, the defendant does not thereby become a party to such *recited contract.*

Although the plaintiffs stipulate for the performance of such *recited contract, that* will not operate to bind the defendant to its performance.

Neither does the assignment of the *recited contract* to defendant, for security for what he has undertaken, make him responsible for the loss of it, unless *such loss* arises from his neglect and misconduct respecting it.

Whether a party is entitled to damages for the loss of a contract recited in the one broken, is a question to be determined by the Court and not by the jury.

On Exceptions from *Nisi Prius*, Rice, J., presiding.

Assumpsit for an alleged breach of the following contract, made Oct. 1, 1849, between John Stickney of the first part, John Bridges, jr., Nath'l Conant and Robert L. Bridges of the second part. " Whereas the persons of the second part have associated themselves to do business, for the purposes hereinafter named; they having entered into an agreement with Nehemiah Marks, of St. Stephen, to clear out and make navigable for driving logs, Bolton brook, (so called,) and when completed are to receive the sum of $3500, in timber share, and have also agreed to log on said Marks' land upon Bolton Lake, (so called,) for the period of ten years, and pay timber share per year at the rate of two dollars per thousand, superficial feet, and for spruce one dollar per thousand feet; and now for the purpose of aiding and assisting the persons of the second part to clear out said brook and also for logging, the person of the first part agrees to furnish them with such articles of supplies, that shall be needed by them in clearing out said brook and for the lumbering operation, and to continue so to supply for the term of three years, unless through any neglect on their part, or inability in any way on their part, to perform as shall be considered unsafe to make any further advances to them of the second part; then the person of the first part may withhold, and he may prosecute the clearing out of said brook, or the lumbering operations, should he elect or choose to do so.

" And the persons of the second part agree to receive the supplies as stated, and clear out said brook as per their agreement with said Marks, and to log each year with not less than four six ox teams upon Bolton lake or brook, and to use all due diligence therein in cutting, hauling and driving said logs into the boom in Baring, as per their permit or license with Marks. The person of the first part is to have the sawing and manufacturing in his mills in Baring of all the logs cut or hauled by, through or under them in any way or manner, under the permit from said Marks.

" To secure the person of the first part for advances and supplies, the persons of the second part indorse over their agreement with said Marks, and are to give a bill of sale or lien each year on all of their logs that shall be cut and hauled by them or under them." The Marks contract was assigned to defendant.

The plaintiffs introduced evidence tending to show, that they went on to clear out the brook in the fall of that same year, and commenced lumbering the ensuing winter, and that defendant neglected and refused to furnish the needed supplies; also evidence tending to show the value of the Marks contract, and the loss thereof, all which was objected to by defendant. Evidence was introduced by defendant, by which he sought to excuse himself from furnishing the supplies, and upon the question of damages.

Plaintiffs claimed not only damages for breach of the contract made with defendant, but for the loss of the benefits of the Marks contract, which they could not fulfil, in consequence, as alleged, of the defendant's failure in furnishing the supplies.

Many instructions were requested by defendant, but only one is necessary to be stated, which was: —

That the true rule of damages in this case is the difference between the price of the supplies and advances stipulated in the contract, and what it would have cost the plaintiffs to procure similar supplies and advances, and also any sum additional it might have cost the plaintiffs to have manu-

factured the timber, and delivered it at salt water. This was withheld. But the presiding Judge did instruct the jury, *that*, if they found that defendant committed a breach of the contract, he is liable to make good the immediate and necessary loss resulting from such breach; *that* the loss or damage the defendant is liable for, must be the immediate and necessary result of such breach; *that*, if the plaintiffs lost all benefit under the Marks contract, and such loss was the immediate and necessary result of defendant's breach of his contract with the plaintiffs, then the jury might estimate the value of that contract at that time. Plaintiffs claim, that that was a very valuable contract; *that* timber share had greatly advanced; *that* the Marks lands contained a large quantity of very valuable timber, that has come to be very desirable; and that they have suffered great damage from its loss. In estimating the damage for the loss of that contract, the stand point is the time of the breach of defendant's contract with plaintiffs. What was the value of that contract in 1850, with all its rights and advantages, looking at all the surrounding circumstances, as they then existed? *That* they would not be authorized to take into consideration any advances or depreciation which has occurred in the price of timber shares since the alleged breach of defendant's contract with the plaintiffs; *that*, if the plaintiffs had failed in any respect to comply with the terms of their contract with the defendant, or if by reason of their negligence or inability to perform on their part, it had become unsafe for the defendant to continue to furnish them with supplies, then he was authorized to withhold, and by so doing, would not be liable in damages.

The jury returned a verdict for plaintiffs for $4802, and defendant excepted to the rulings, &c. of the Judge.

*J. Granger*, in support of the exceptions.

1. The Judge erred in admitting the evidence objected to on the question of damages. It was a mere matter of opinion and conjecture.

It was hypothetical and not based upon any facts that

existed at the time of the alleged breach of the contract declared on.

The loss of the Marks contract was not a proper subject for damages. The probable profits that the plaintiffs might have derived under that contract was a matter too remote, uncertain, contingent and speculative for any proper basis for the recovering of damages. Chitty on Contracts, 870; *Bishop* v. *Williamson*, 8 Greenl. 162; *Barnard* v. *Poor*, 21 Pick. 378; *Miller* v. *Mariners' Church*, 7 Greenl. 51; Sedgwick on Damages, (2d ed.) 68, 69, 78, 108; *Fogg* v. *Harding*, 7 Cush. 522.

2. The instructions given as to the rule of damages were erroneous.

They were calculated to mislead the jury; to withdraw them from the consideration of the whole case, and authorize them to select a part of the case, and award damages on that part independent of other parts that might control it. The instructions were erroneous in authorizing the jury to give damages for the loss of anticipated profits under the Marks contract. *Loker* v. *Damon*, 17 Pick. 284; *Thompson* v. *Shattuck*, 2 Met. 215; *Fox* v. *Harding*, 7 Cush. 522; *Deyo* v. *Waggoner*, 19 T. R., 241; *The Schooner Lively*, 1 Gall. 314, 325; Sedgwick on Damages, 68, 69, 108, 159, 165; *Blanchard* v. *Ely*, 21 Maine, 343; 2 Kent's Com. (5th ed.) 480, and notes; *Smith* v. *Condy*, 1 Howard, U. S. R., 28; *Boyd* v. *Brown*, 17 Pick. 543; *Watson* v. *The Ambergate, Nottingham & Boston Railway Co.*, English Equity and Common Law Reports, vol. 3, p. 497, (L. & B's ed.)

3. The loss of the Marks contract was owing to plaintiffs' own fault, and in no way attributable to defendant. The liability of the defendant could not legally be increased or diminished by any reference to the pecuniary condition of the plaintiffs.

4. The instructions to the jury were erroneous in submitting to them the question, whether the loss of the Marks contract was the immediate and necessary result of the breach of the defendant's contract with plaintiffs, as there

was no sufficient evidence in the case to authorize the submission of that fact to the jury, and because that fact was immaterial.

5. The Judge should have instructed the jury as matter of law, that no damages could be recovered under the Marks contract.

*T. J. D. Fuller, contra:*

SHEPLEY, C. J. — The suit is upon a contract made between the parties on October 1, 1849. The principal claim is for damages alleged to have been occasioned by a breach of it. The contract recites, that the plaintiffs had before, on September 11, 1849, made a contract with Nehemiah Marks to clear out and make Bolton brook navigable for running logs, and to cut and haul a certain quantity of timber from the land of Marks for ten years; that they were to receive a certain sum for making the brook navigable, and to pay an agreed price for the timber. To enable the plaintiffs to execute that contract, the defendant agreed " to furnish them with such articles of supplies, that shall be needed by them in clearing out of said brook, and for their lumbering operations, and to continue to so supply for the term of three years," unless they on their part should fail to perform.

The plaintiffs agreed to clear out the brook according to their contract with Marks, and to log each year on that land, with not less than four six ox teams. The lumber was to be sawed at defendant's mills, upon certain terms agreed upon; and payment for the supplies was to be made from the first sales of the lumber sawed. The contract with Marks was to be, and was assigned to the defendant, as security for performance by the plaintiffs.

The defendant, by the verdict of the jury, must be regarded as having, without sufficient cause, neglected or refused to perform the contract. The most important question presented at the trial appears to have been the damages which the plaintiffs were entitled to recover.

Bridges *v.* Stickney.

If the contract between these parties had contained no recital or reference to the contract made with Marks, there could have been no doubt respecting the measure of damages, for a refusal to furnish the supplies, necessary to enable the plaintiffs to perform it. It would have been the difference between the price agreed to be paid, and the market price of the like goods, at the time and place of delivery. *Furlong* v. *Polleys*, 30 Maine, 491; *Beals* v. *Terry*, 2 Sandf. 120. The plaintiffs might also have been entitled to recover damages suffered by reason of any other breach of the contract. Beyond this, they could have had no legal claim, although by reason of their lack of means or credit they might have failed to perform their contract with Marks. For damages can only be such, especially when they are claimed as expected profits, as arise out of a breach of the contract, upon which the action is brought, and not out of one collateral to it.

In an action to recover damages for breach of a covenant against incumbrances, a claim was made to recover greater damages than would be occasioned by the existing incumbrance, on the ground, that the value of the estate was thereby diminished to a greater extent. The right to do so was denied. The opinion states, "and in general, the damages for a breach of covenant or obligation must be such as the party suffers in respect of the particular thing, which is the subject of the contract, and not such as have been accidentally occasioned, or supposed to be occasioned, in his business or affairs." *Batchelder* v. *Sturgis*, 3 Cush. 201.

In the case of *Fox* v. *Harding*, 7 Cush. 516, while considering the right of a party to recover damages for the loss of profits, it is said, "if the profits are such as would have accrued and grown out of the contract itself, as the direct and immediate results of its fulfillment, then they would form a just and proper item of damages." "But if they are such as would have been realized by the party from other independent and collateral undertakings, although entered into in

consequence and on the faith of the principal contract, then they are too uncertain and remote to be taken into consideration as part of the damages occasioned by a breach of the contract in suit."

In the case of *Masterton* v. *The Mayor of Brooklyn*, 7 Hill, 61, the rule of the civil law is stated and approved.

" In general, (says the civil law,) the parties are deemed to have contemplated only the damages and interest, which the creditor might suffer from the non-performance of the obligation in respect to the particular thing, which is the object of it, and not such as may have been incidentally occasioned by other affairs; the debtor, therefore, is not answerable for these, but only for such as are suffered with respect to the thing which is the object of the obligation; *damnum et inter esse ipsam rem non habitam.*" 1 Ev. Poth. 81.

NELSON, C. J., in his opinion says, " when the books and cases speak of the profits anticipated from a good bargain, as matters too remote and uncertain to be taken into the account, in ascertaining the true measure of damages, they usually have reference to dependant and collateral engagements, entered into on the faith and in expectation of the performance of the principal contract. The performance or non-performance of the latter may, and often, doubtless, does exert a material influence upon the collateral enterprizes of the party, and the same may be said as to his general affairs and business transactions. But the influence is altogether too remote and subtile to be reached by legal proof or judicial investigation. And besides, the consequences when injurious, are as often, perhaps, attributable to the indiscretion and fault of the party himself, as to the conduct of the delinquent contractor. His condition in respect to the measure of damages ought not to be worse for having failed in his engagements to a person, whose affairs were embarrassed, than if it had been made in prosperous or affluent circumstances."

These rules for the assessment of damages appear to

have been approved in the case of *Phil., Wil. & Baltimore Railroad Co.* v. *Howard,* 13 How. 307.

So on the other hand the right of a defendant to recover damages is limited to such as arise out of the contract on which the action is founded. *Cram* v. *Dresser,* 2 Sandf. 127; *Deming* v. *Kemp,* 4 Sandf. 147.

The fact that one contract is recited as the occasion for making another to enable a party to perform it, does not make a party to the latter a party to the former. He could not become so without the consent of all the parties to it. Nor can such recital make him a party to it in any sense, or to any person further than he, by his own contract, engages to perform or to aid another in the performance of the prior contract. To such extent as he makes such engagements he becomes responsible for its performance, and no further. There can be no more reason to hold him liable in damages for the loss of the prior contract, unless he has made himself responsible for its performance, than there would be to hold him liable in damages for the loss of a contract subsequently entered into upon the faith that his own contract would be performed. Upon examination of the contract between these parties, no stipulation of the defendant is found, by which he engages to perform the contract with Marks, or to aid the plaintiffs to do it, further than to furnish them with supplies for that purpose, for three years. The lumber was to be sawed in his mill, but that appears to have been a stipulation in his favor, and to have been so regarded in the contract which declares, "the person in the first part is to have the sawing of the lumber."

There are stipulations of the plaintiffs to the defendant, that they will perform their contract with Marks. These were evidently made to secure the defendant payment for the supplies furnished by him, and the advantages expected from a performance of the contract. These stipulations of the plaintiffs to perform the contract with Marks, could not operate to bind the defendant to its performance.

The contract between the plaintiffs and Marks must there-

fore be regarded as collateral to that made between these parties, so far as the defendant has not engaged to aid in its performance by furnishing supplies.

In the case of *Fox* v. *Harding*, the opinion says, " if the plaintiff had offered to prove, that in consequence of the breach of the contract by the defendants, they had lost other contracts, by which they would have realized large profits, and which they had entered into, for the purpose of fulfilling their contract with the defendants, the evidence would have been wholly inadmissible. Such profits are too uncertain, remote and speculative in their nature, and form no proper basis of damages."

With respect to the assignment of the contract made with Marks to the defendant, it may be observed, that one who takes an assignment of a contract between other parties as security, can only be held responsible for its loss, by reason of some neglect of duty or misconduct respecting it. If one should take an assignment of a valuable contract for the charter of a vessel as security for furnishing outfits for the voyage, and should fail to fulfil his contract for outfits, he would not thereby become liable for a loss of the contract of charter.

If the defendant were to be held liable for a loss of the contract made with Marks, that loss could be ascertained only by a conjectural estimate of the profits, to be expected from a performance of it. These must necessarily depend upon the rise and fall of the price of labor, provisions and timber, for the term of ten years, while the defendant's contract for supplies would terminate in three years. When it is considered, that such an estimate is by law to be made at the time of the breach, and not after an experience of prices for the ten years, it will be perceived, that such an estimate must be at best merely conjectural, resting upon no solid foundation whatever.

Any such conjectural profits were to be derived from cutting standing trees. When the performance of a contract for the right to cut trees standing, was prevented by

a person, who carelessly set a fire, by which the trees were destroyed, the Court decided, that profits to be expected from cutting the trees, which had thus been destroyed, could not be taken into account in estimating the damages. The opinion states, " In regard to profits, which might have been realized from cutting the remainder of the standing wood, in pursuance of the contract, we think it is an interest too remote and contingent to be the subject of damages in this action." *Barnard* v. *Poor*, 21 Pick. 378.

If the defendant failed to furnish supplies, the plaintiffs might have obtained them elsewhere, at the expense of defendant, and have thus proceeded to perform their contract with M~rks. Their inability to do so, arising out of their lack ⸬ means or of credit, cannot change the legal rights of the parties. The law is not varied by any consideration of the wealth or poverty of the parties to a contract.

While the jury were correctly instructed, that the defendant would be liable only for such damages as were the immediate and necessary result of a breach of the contract, they were also instructed, " if the plaintiffs lost all benefit under the Marks contract, and such loss was the immediate and necessary result of the defendant's breach of his contract with the plaintiffs, then the jury might estimate the value of that contract at that time." The error consisted in submitting to the jury, whether the loss of the contract made with Marks, resulted from a breach of the defendant's contract, when the law determines upon the testimony presented, that the plaintiffs were not entitled to recover damages for a loss of that contract.

It is not necessary to consider the other matters presented. *Exceptions sustained, verdict set aside,*
*and new trial granted.*

TENNEY, HOWARD, APPLETON and HATHAWAY, J. J., concurred.