SHELDON *vs.* SHERMAN & VAN DUZEN.

Common justice requires that where one has incurred necessary expense, or suffered damages in securing, or caring for, or storing the property of another which is lost, afloat or estray, and it is afterwards reclaimed, the owner should repay such expense, or pay such damage, and if refused, that an action should be allowed to recover therefor. That in such a case the law should imply a request, and a promise from the owner.

The defendants having a large number of saw logs, secured by a boom, in the Hudson river, a public way for floating logs and rafts, an unusual freshet occurred, whereby said logs were carried away, floated down the river and lodged upon the meadow lands of the plaintiff, where they remained several months, when they were taken away by the owners. The logs passed the boom, floated down the river, and lodged on the plaintiff's land without any negligence, omission, fault or wrongful act of the defendants ; but the plaintiff sustained damage by reason of their remaining on his land.

*Held,* that although a promise could not be implied to pay, nor a recovery had, for the damage occasioned by the mere *lodgment* of the logs on the plaintiff's premises, yet that for the damages caused by *suffering them to remain* there for an unreasonable length of time, the same having then been reclaimed, a promise to pay could be implied, and a recovery had, thereon.

THIS was an action tried by the court without a jury. The findings of fact, so far as material, were as follows : 1st. In March, 1859, the defendants had a large number of

saw logs secured by a boom in the Hudson river at Glens Falls. 2d. During that month an unusual freshet occurred, whereby said logs were carried away, floated down said river and lodged upon the meadow lands of the plaintiff; where they remained until the next fall and winter, when they were taken away by the defendants. 3d. That said logs passed the boom, floated down said river and lodged on the lands of the plaintiff without any negligence, omission, fault or wrongful act of the defendants. 4th. That the plaintiff sustained damages by reason of the logs remaining on the meadow for the period aforesaid, to $431.93.

As a conclusion of law from these facts the court held that the defendants were liable for such damages, and directed judgment accordingly.

To the conclusion of law the defendants excepted, and from the order for judgment they appealed to the general term.

*E. F. Bullard*, for the plaintiff.

*S. Brown*, for the defendants.

*By the Court*, JAMES, J. Upon the facts found, in this case, the plaintiff insisted that he was entitled to recover as upon an implied promise, for the damages sustained by him in consequence of the logs remaining upon his land, and so the court below held. It is certain that a promise could not be implied to pay, nor a recovery had, for the damages occasioned to the plaintiff's land by the mere lodgment of the logs on his premises; in fact, an express promise to pay for such damages would have no consideration to uphold it.

It may be said that these logs were neither purposely or wrongfully on the plaintiff's land. They did not come there through the willful negligence of the defendants; their being there was simply the result of accident.

Great floods are designated in the books as fortuitous;

neither to be foreseen or prevented by the providence of man. Being fortuitous, they cast no blame or liability on man.

When an accident occurs entirely from superior agency, and without fault on the part of the party sought to be charged, or blame imputable to him, an action for an injury resulting from such accident cannot be maintained. If the house of A. accidentally take fire and the adjoining house of B., in consequence, be consumed, no action arises to B. against A. for the loss. So if a tree which is blown down fall into the ground, or upon the house of a neighbor, the owner of the tree is not responsible for the injury. Had these logs been driven by the flood against a warehouse or other building situate on the river bank, and demolished it, the owner could not have maintained an action for the loss. So in this case, an action cannot be sustained for the bare lodgment of the logs by the flood upon the plaintiff's land. It was contended on the argument, that the defendants were liable by reason of having placed their logs in the river; but that is not so. The Hudson river is a public way for floating logs and rafts; and the defendants had the right to its use for that purpose, being responsible only for damages occasioned by direct illegal acts, or resulting from negligence. A traveler in the highway is not responsible for damages occasioned by his horses taking fright and running away without his fault; yet it might be said the injury would not have happened had the traveler remained at home.

When an injury is occasioned by the direct act of a party, he is liable; as when he cuts trees and they fall on to another's land, (*Hay* v. *The Cohoes Co.* 2 *Comst.* 159;) but when the injury is the result of accident, the injured party is without redress. In this case the logs were not placed upon the plaintiff's land by any direct act of the defendants, nor by reason of their negligence or fault, and therefore no promise can be implied to pay the damages occasioned by their lodgment simply. But these logs, after remaining upon the plaintiff's land for nine months, were reclaimed and removed

by the defendants, and the recovery below was for the injury sustained in consequence of the logs so remaining.

Suffering the logs so to remain would not alone give a right of action, because the owners might, if they chose, abandon them, in which the logs would become derelict, and, like treasure trove, belong to him who first reduced them to possession. If a flood should sweep down the forest of A. on to the land of B. the former could not be compelled to remove it; nor could B. maintain an action against A. for damages, if A. saw fit to abandon all claim to the timber. But the owner of property thus carried on to the land of another, or lost, is not thereby deprived of his right to it; he may abandon it, or he may reclaim it; if not abandoned, he may have an action for its possession, or value, against any one who detains or converts it. (*Nicholson* v. *Chapman*, 2 *H. Blackstone*, 254.) It was said ·in *Isaac* v. *Clark*, (2 *Bulst.* 512,) that " where a man doth find goods he is bound to answer him that hath the property;" and this has always been the rule as well in regard to property which comes to the possession of another by accident as by finding ; and an entry upon another's land to retake one's own property which has come there by accident, as if fruit fall into another's ground, or a tree be blown down upon another's land, may be justified. (*Anthony* v. *Harvey*, 8 *Bing.* 191. *Story on Bailment, sec.* 83 *a.*) If a party seek to reclaim property lost or accidentally on the premises of another, before any damage, labor or expense has arisen or been incurred respecting it, the finder or the person in whose possession it be has no claim upon him for recompense; but if he do not ; if, after delay, he reclaim the property, he will be liable for all damages arising from the delay, and for necessary labor and expense incurred respecting it ; although no lien attaches for such claim. (*Nicholson* v. *Chapman, supra.*) In such case the law will imply a promise to pay for such damages, or for such labor and expense.

It was urged that the claim here was for a gratuitous service, and that a promise could not be implied in such case. It is certain that a promise cannot be implied for a mere gratuitous service, where such service is vóluntary; such as saving property from fire, or from water; securing boats astray; unsolicited supplies of food, or unsolicited service. (*Binstead* v. *Buck,* 2 *W. Black.* 1117. 2 *Strange,* 278. 1 *Esp.* 86. 1 *M. & S.* 290.) But suffering these logs to remain on the plaintiff's meadow was not, in any sense, a voluntary or gratuitous service. Had the claim been for catching the logs when afloat, or removing them to a place of safety after their lodgment, or returning them to the river, it would have been a voluntary and gratuitous act; but suffering them to remain where they were carried by the water, was a forced use of the plaintiff's land, short of a trespass, and beneficial to the defendants, by having them stored convenient to the river for removal at the proper season, by not being required to incur expense in their removal at an inconvenient season, or forced into an abandonment or sale, as they might have been, by proceedings under 1 *R. S.* 698, or distress damage feasant. (*Woodfall's Landlord and Tenant,* 627. 2 *R. S.* 618.) Suppose it had been the defendants' horses instead of their logs which had been thrown upon the plaintiff's meadow, and they had been suffered to remain there with the defendants' knowledge for nine months, and then they had been reclaimed, can there be a doubt that a request to keep and a promise to pay for their keeping would be implied?

A promise will always be implied whenever natural justice requires it in consideration of some benefit conferred. (5 *Greenl.* 519.) It was intimated in *Amory* v. *Flyn,* (10 *John.* 102,) that a finder of the property was entitled to be reimbursed the necessary expenses of keeping it; and it was held in *Reder* v. *Anderson,* (4 *Dana,* 193,) that the finder was entitled, under an implied assumpsit, to an indemnity

at least against his expenditures of time and money, in the recovery of lost property. (*Story on Bailment*, 121 *a*, 621 *a*.)

The rule of the civil law, upon this subject, is thus stated in *Domat*, (*vol.* 1, *pp.* 629, 630, *part* 1, *b.* 2, *tit.* 9, *sec.* 2, *arts.* 3, 4, 5 :) " The proprietor of ground on which is thrown the rubbish of a building that is fallen down, or that which a flood has carried away from another's ground, is obliged to suffer him who has had the loss to take away what remains, and to allow him such free access to his grounds as is necessary for that end; but he who desires to have back the materials of his building that is fallen down, or that which a flood has carried away from his land and thrown upon another man's ground, is obliged on his part not only to indemnify the proprietor of the said ground as to what damage shall happen to be done by his taking away the things which have been thrown upon it, but he is bound to repair all the damage which has been already done to the ground by the things since they were cast upon it. But if he chooses rather not to take away any thing, he will owe nothing; for if he abandons to the proprietor of that ground all that has been cast upon it, he is not bound to make good a damage that has happened by the bare effect of that accident; it is enough that he loses what the accident has carried away from him." The same rule is also laid down as the law, in *Hammond's Nisi Prius*, 168, § 3.

The plaintiff's case is precisely within the foregoing rule of the civil law and the principle of the common law as recognized in *Nicholson* v. *Carpenter*, (2 *H. Blk.* 254 ;) *Amory* v. *Flyn*, (10 *John.* 102 ;) and *Henly* v. *Walsh*, (2 *Salk.* 686.)

Common justice also requires, that where one has incurred necessary expense, or suffered damage, in securing, or caring for, or storing, the property of another which is lost, afloat or astray, and it is afterwards reclaimed, the owner should repay such expense, or pay such damage, and if refused,

that an action should be allowed, to recover therefor; that in such case the law should imply a request, and a promise from the owner.

I think the judgment below was right and should be affirmed.

Judgment accordingly.

[SCHENECTADY GENERAL TERM, May 3, 1864. *Potter, Bockes, James* and *Rosekrans,* Justices.]