By the Court:

Freedman, J.
The plaintiffs claim that they are entitled to recover against the defendant:
I. The $8,000 cash dividends declared upon the first 1,000 shares mentioned and referred to in the contract of February 18, 1867, with interest.
II. The value of $1,000 additional shares of an alleged later issue, at the price of 149, that being the alleged market value of the same on February 8, 1868, less the price of 54, at which they were issued by the company, with interest, &c.
III. A cash dividend of $4,000, claimed to have been made upon the 1,000 additional shares of the later issue; and
*193 IV. The value of the first 1,000 shares of Hudson River Railroad stock, mentioned in the contract of February 18, 1867. at the price of 149, that being the alleged market value of the same on the 8th day of February, 1868, after deducting therefrom the contract price of 128, with interest at the rate of six per cent, added thereto, from the date of the contract.
Upon a mere inspection of the contract, it does not appear whether the defendant had or had not at the time the possession of the 1,000 shares therein referred to; and the first question which presents itself is as to the effect of the said contract. Does it constitute an actual bargain and sale, whereby the 1,000 shares, the subject of the said contract, became the property of the plaintiffs the moment the contract was concluded, and without regard to the fact that the defendant had the option to deliver the shares at any time dining the year he saw fit; or is it a mere executory agreement, an agreement to sell, to be carried into effect at some time during the course of that year, according to the pleasure of the defendant ?
There is no doubt—to use the language of Judge Comstock in Decker v. Furniss (4 Kern., 612)—that the phrases “ we have purchased ” and “ I have sold,” standing at the head of the contract, import an executed sale; but such phrases are quite inconclusive, and are often made to yield to other terms of the contract evincing a different design, and they are qualified in this case by the words: “ payable and deliverable, sellers’ option, in this year (1867), with interest at the rate of six per cent, per annum; either party having the right to call, from time to time, for deposits to meet the fluctuations of the market.”
The defendant’s engagement to deliver was not unconditional, but dependent upon ‘the exercise of his option; he had a right to perform that part of the contract at any time between the date thereof and the 31st day of December, 1867; he was in no way chargeable for the non-delivery until after the expiration of the last-named day, and a tender on the part.of the plaintiffs after that day; and before the exercise of the option by the defendant, neither of the parties could be in default before said *194 31st day of December, 1867 (Russell v. Nicoll, 3 Wend., 113; Outwater v. Dodge, 7 Cow., 85 ; Ward v. Shaw, 7 Wend., 405; McDonald v. Hewitt, 15 Johns. R., 349).
The obligation of the vendor in this ease to deliver, and that of the buyers to pay, are concurrent conditions in the nature of mutual conditions precedent, and neither party can enforce the contract against the other without showing performance, or offer to perform his own promise, according to the conditions of the contract; and as the vendor had the option to deliver at any time, according to his pleasure, between the day of the contract and the 31st day of December, 1867, and the buyers could not be called upon to pay before delivery, it cannot be considered as an executed contract of sale.
It is true, that in some cases, notwithstanding the postponement of payment and delivery, it has been held that the right of property became vested in the vendee, while the right of possession continued in the vendor until the payment of the purchase-money ; but these cases have reference only to the sale of specific personal property, and if the plaintiff intends to claim title to the 1,000 shares upon the principles decided by these cases, they should have shown either that- the identical 1,000 shares were, at the time of the execution of the contract, in the possession of the defendant, or some other specified place; that they were defined and designated so as to be capable of being identified and distinguished from other shares of the same company, and that the contract referred to this particular lot.
It does not appear from the contract that reference was had or made to any specific or particular lot of shares, nor does the evidence show that such was the intention of the parties, and therefore the general rule applies, that if goods be sold while mingled with others, by number or otherwise, the sale is incomplete, and the title continues with the seller until the bargained property be separated or identified (2 Kent Com., 496). The reason is, in such case, that the sale cannot be applied to any article until it is clearly designated, and its identity thus ascertained. Thus, if an entire flock of sheep is sold at so much the *195 head, and it is agreed that they shall be counted after the sale in order to determine the entire price of the whole, the sale is valid and complete. But if a given number out of the whole are sold, no title is acquired by the purchaser until they are separated, and their identity thus ascertained and determined. The distinction in all these cases does not depend so much upon what is to be done, as upon the object which is to be effected by it. If that object is specification, the property is not changed; but if it is merely to ascertain the total value at designated rates, the change of title is effected. Thus, where there is a bargain for a' certain quantity, ex a greater quantity, and there is a power of selection in the vendor to deliver which he thinks fit, then the right to the property does not pass to the vendee until the vendor has made his selection, and trover is not maintainable until that is done. If I agree to deliver a certain quantity of oil, as 10 out of 18 tons, no one can say which part of the whole quantity I have agreed to deliver until a selection is made. There is no individuality until it has been divided (Gillette v. Hill, 2 C. &M., 530).
The case of Kimberly v. Patchin (19 N. Y., 330) does not establish a contrary doctrine, as claimed by plaintiff, but on examination it will be seen that it is in perfect harmony with the general rulé referred to by me. In this case the parties clearly expressed their intention that the title should pass. The owner of the wheat, lying in mass in his warehouse, sold 6,000 bushels thereof for a specified price, executed to the vendee a receipt, acknowledging himself to hold the wheat subject to the puiv chaser’s order, received drafts on account of the purchase-money, and fully arranged for the payment of the balance, and otherwise fully completed the sale, so far as necessary. Under these circumstances the Court held, among other things, that where the quantity and general mass from which it is to be taken are specified, the subject of the contract is thus ascertained, and it becomes a possible result for the title to pass, if the sale is compíete in all its other circumstances, &c. And the title may also pass, where goods are delivered by the vendor to the parchasen *196 although no fixed price is agreed upon. Thus, in Joyce v. Swann (17 Com. B., N. S., 84, 1864), cited by plaintiffs, the question was whether or not one McCaster had an insurable interest in a certain quantity of guano, at the time of effecting tire policy, and the judge charged the jury to the effect that, if the guano was put on board the vessel by the vendors, with the intention of passing the property to McCaster, they must find for the plaintiff ; and that it was not a necessary condition to the passing óf the property that the price should be definitely agreed on. The jury rendered a verdict for the plaintiff.
Williams, J., who delivered one of the opinions in banco, approves the verdict on all the facts in the case, and says that “ where, from all the facts in the case, it may fairly be inferred that it was the intention of the seller to pass the property in the goods shipped to order, the mere fact of the bill of'lading being taken in the name of the seller will not prevent its passing; but if the bill of lading was retained to hold - dominion over the goods, that then there was no intention to pass the property; but if the whole of the circumstances lead to the conclusion that that was not the object, the form of the bill of lading has no influence on the result. In this case the bill of lading was in the name of the seller.” *
Such cases, however, are exceptions to the general rule, and they merely decide that the title may pass where it is the clear and positive intention of both contracting parties that it shall pass. But the old rule which held that upon a sale of a specific chattel, notwithstanding the postponement of payment and delivery, the right of property may in some cases become vested in the vendee, while the right of possession only continues in the vendor until the payment of the purchase-money, has not only been modified in this State in all cases where payment and delivery are to be in futuro, and are to be simultaneous and concurrent acts (Benedict v. Field, 16 N. Y., 595-7; Baker v. Bourcicoult, 1 Daly, 24; Russell v. Minor, 22 Wend., 664-671; Chapman v. Lathrop, 6 Cow., 110); but also in cases where the contract shows that there is no intention to pass the property *197 until something further is done by the seller. In such cases it has been held that the sale is not perfected and the property does not pass until the thing be done (Ward v. Shaw, 7 Wend., 404; Chapman v. Kent, 3 Duer, 232).
In the case under consideration the defendant had until the 31st day of December, 1867, to exercise his option. The plaintiffs and the defendant are stock brokers; they dealt with each other as such; it may be assumed that the plaintiffs were well acquainted with the rules and custom prevailing among brokers as to the sale of stocks, and with the fact that it was not necessary for the defendant under his contract to have the 1.000 shares of stock actually on hand. Formerly such a contract was a mere wager, and illegal by statute, whenever the seller did not possess the stocks at the time (R. S., art. 2, tit. 19, ch. 20, secs. 6, 7, and 8); but this statute was repealed by an act entitled “An act to legalize the sale of stocks on time ” (4 Edm. Statutes at Large, p. 110), and in this repealing statute is an express provision that' thereafter no contract for the purchase, sale, &c., of stocks shall be void, because the vendor at the time of making the contract is not the owner- of the shares. This statute, therefore, legalizes contracts for the sale of stocks, on time, and which the vendor does not own. The plaintiffs undoubtedly were familiar with it, and it cannot therefore be said, in the light of this statute and the contract palpably drawn under it, and also in the light of the object of the contract, that the defendant contracted for the delivery of a certain specific lot of 1.000 shares, or warranted the present possession by him of any such lot on the 18th day of February, 1867.
For the purpose of carrying out his contract as made, it was not necessary for the defendant to be a stockholder on the books of the company at any time; it was sufficient if on the 31st day of December, 1867,-he held a certificate representing 1,000 shares, with the necessary power of attorney to transfer the seme, and if he held ^uch certificate at any time prior to said date, he had a right to use it, and the number of shares represented thereby in his business, in any manner" he saw fit, until that day, *198 The rule, therefore, that a vendor impliedly warrants his title to what he assumes to sell, and consequently warrants the existence of what he assumes to sell, does not, since the passage of the statute referred to, necessarily apply any more to contracts for the sale of stocks on time, and’ for this reason it is unnecessary to notice or examine the numerous authorities cited by plaintiffs’ counsel in support of-the application of the rule referred to the contract in this case. Under the said statute a party may make a contract for the purchase of stocks on time with a person who neither owns the stock nor has the possession or control of it; but if the purchaser fail to guard his own interests by express stipulations against the dilution of the stock b„y the company by which it has been issued, it seems to me the contract may afterward be satisfied by the delivery of stock as it exists on the day the contract is to be performed; and unless the purchaser insists in his contract upon all dividends, profits, and advantages which may be declared upon or spring from the stock during the running of the contract, he should not, in my judgment, be afterward permitted to make claim to them. A little prudence exercised at the proper time will enable him to secure all his contemplated rights in this respect.
Again, as the defendant was under no obligation to be a stockholder on the books of the company, nor to have a certificate for 1,000 shares ready for delivery prior to the 31st day of December, 1867, how can it be said that it was his duty on or about the 10th day of April, 1867, to subscribe for 1,000 additional shares, which he could do in no other way except by becoming a stockholder upon the books of the company before that time, and to furnish the necessary funds to the amount of upward of fifty thousand dollars to meet his subscription ? Of what valué would the option he expressly reserved to himself, be in such case?
' All these circumstances tend to show that the contracting parties at the time of the execution of the contract could not have contemplated that the title to the shares should pass.
It has been conceded by plaintiffs’ counsel that the justice *199 who tried this cause was correct in holding that dividends declared and additional shares issued, when declared and issued, become the property of those who own the stock, in respect whereof they are declared and issued at the time of said issue and declaration, and that they are not incorporated in, nor do they become a part of, that stock in respect whereof they are issued, but are mere profits arising therefrom to the then owners thereof. There can be no doubt of the correctness of this proposition generally, although, strictly speaking, the profits do not arise from the stock, but are earned by the corporation, and are distributed to such owners as are recognized as such on the books of the company.
In Spear v. Hart (3 Robertson, 420) .the dividend had been declared before fhe sale, but was payable after the day fixed for the delivery of the stock, and the court held, “ that the dividend belonged to the defendant and did not pass to the plaintiff under the contract. Dividends are not an incident to stock, so as to pass with the stock. Unlike, interest, they are not earned by the money represented in the stock, but by the corporation ; and are divided among the shareholders, and may be sold or assigned without parting with the stock.”
Kelly v. Upton (5 Duer, 336) is a case presenting the same questions as the case now under consideration, with the difference that in that case the option was on the part of the buyer. The court held that the contract was executory; that where the delivery of the thing sold and the payment of the price are to be simultaneous acts, the title, until delivery or payment, remains in the seller.
The two cases last referred to seem fatal to the first three claims of the plaintiffs. They expressly decide that the contract in this case must be considered as an executory agreement, passing no title to the plaintiffs^ however different their understanding of its effect may have been, and that the dividends and accretions as a general rule follow the title.
The plaintiffs, however, claim that, although this may be so, the provision in the contract in this action that the purchasers *200 should pay interest,on the contract price from the date of the contract, is such a peculiar and controlling feature in the said contract in respect to its interpretation, as to take it out of the operation of the general rule; that in consequence thereof it should he so interpreted as to hold the vendor liable to deliver the profits with the shares sold. The contract in Kelly v. Upton (5 Duer, 336) contained the same feature. The learned counsel for the plaintiffs contended for the correctness of this theory so strenuously and presistently that, in view of the importance of this case, I made a complete and thorough examination and classification of the numerous authorities cited by the plaintiffs promiscuously upon this point. They establish the following principles:
I. In case of non-performance of a contract 'at the time fixed for the completion of the same, without wilful fault on either side, the purchaser as a general rule is entitled to the profits of the estate from the time fixed upon for completing the contract, whether he does or does not take possession of the estate; and, as from that time the money belongs to the vendor, the purchaser will be compelled to pay interest for it, if not paid at that day (2 Sugd., V. and P., *193; Ackland v. Gaisford, 2 Haddock, 28,1816; Champernowne v. Brooks, 3 Clark & Finnelly’s Appeal Cases, 4, 1835).
II. • Where, however, interest is more in amount than the rents and profits, and it is clearly made out that the delay was occasioned by the vendor, although he may be free from p'ersonal misconduct, as, for instance, where the delay is caused by a defect in the vendor’s title, which may be unknown to him, to give effect to the general rule would be to enable the vendor to profit by his own wrong, and the Court, therefore, in such cases, gives the vendor no interest, but leaves him in possession of the interim rents and profits ; and, therefore, in such case, where a good title is not shown until the given period, the purchaser will pay interest only from that period, and he will, of course, take the rents from the same time (Sugden on Vend. and P., *806, sec. 46).
*201 III. Where the non-performance and delay have been occasioned by the wilful default of the vendor, and the vendor has received interest, or has remained in possession, and in the mean time the property has diminished in value, or has been deteriorated by permissive waste, the purchaser is entitled to compensation, which may be decreed according to the circumstances of each case, either by adjudging the vendor not entitled to interest on purchase-money, but on the contrary accountable not only for the rents actually received, but also for those which he might have received but for his wilful default (Sugden on Vend, and P., *806, sec. 44; Regents’ Canal Co. v. Ware, 23 Beavan, 575, 1857, Lord Romilly).
IV. But where there is an express stipulation in the contract that, if the conveyance is not executed and the purchase-money paid by the day named, interest shall be paid by the purchasers ■ until the purchase is completed, the terms of that stipulation apply to every kind of delay, except such as may be occasioned by the wilful default of the vendor.
In such cases the interest does not depend upon any rule of the Court, but upon the express stipulation of the parties, and the terms of that stipulation apply to every delay, however occasioned, except the wilful default of the vendor, or such other delay as may be expressly excepted from the operation of the contract; and whether in such cases the interest exceeds the mesne profits or not, the purchaser must pay interest according to his stipulation (Lord Palmerston v. Turner, 33 Beavan, 525, 1864, Lord Romilly, in which case the purchaser was held to pay interest at four per cent.; William v. Genton, 34 Beavan, 528, 1865 ; Tewart v. Lawson, 3 Smale & Grifford, 307,1856, V. C. Stuart).
V. If, after the contract and before the conveyance, the estate, or a particular and specific fund, or a vested right or specific interest, be improved or increased, or if the value be lessened without any fault on either side, the vendee- has the benefit and sustains the loss (Sugden on V., *819, sec. 98; Anson v. Towgood, *202 1 Jacob & Walker’s Chancery R., 617,1820; Vesey v. Elwood, 3 Drury & Warren, 74, 1842; Kimberley v. Tew, 5 Irish Eq., 389, 1843; Davy v. Barber, 2 Atkins, 490, 1742; Small v. Atwood, 3 Young & Collyer’s Exch. R., 105, 1838).
The cases so far examined refer either to a specific estate in lands, a specific interest in a particular fund, a specific vested right, or other specific property fully described and clearly identified, and therefore have no application to a contract for the sale of stocks generally, which may or may not be in the possession of the seller, which are not described so as to be capable of being’ distinguished and identified. The decision in each of said cases was made upon entirely different principles from those governing the sale of stocks on time. The profits and rents of an estate run with the land and come out of it; the interest and other accumulations attach to a specific fund and become part of the same. It is different, however, with stocks. Again, it will be observed, that in every case so cited, there was either a default on the part of the vendor Irx carrying out his contract, or, at any rate, the other party suffered delay in receiving what was coming to him; but, notwithstanding this, the purchaser was invariably held to the terms of his contract,, whenever he had stipulated to pay interest. In the case under consideration, the vendor did not make any such default.
VI. The next following additional cases cited by the plaintiffs simply decide that whenever a debtor is in default for not paying or repaying money, delivering property, or rendering services in pursuance of his contract, he is chargeable with interest from the time of his default, on the specified amount of money or the value of the property or services at the time they should have been paid or repaid or rendered (Van Rensselaer v. Jewett, 2 Comst.,140; Rensselaer Factory v. Reid, 5 Cow., 587; Cleveland v. Burrill, 25 Barb., 538; Viele v. Troy and Boston R.R. Co., 21 Barb., 396).
As the defendant in this case, under his option, had the right to postpone the performance of his contract until long after the dividends had been declared and the additional stock issued, it *203 is very clear, upon the principles laid down in the cases above cited, that he could not have made default, so as to entitle the plaintiffs to these dividends and accretions, upon the mere ground that they had voluntarily agreed to pay interest from the date of their contract.
VII. The decision in the cases of Courtney v. Ferrers (1 Simons, 137, 1827), Webster v. Donaldson (34 Beavan, 451, 1865), Terry v. Wheeler (25 N. Y., 520, 1862), turns upon the peculiar circumstances of each case.
In Courtney v. Ferrers, the assignment of the policy assigned “ the policy and all moneys, benefits, and advantages to arise, accrue, or become due or payable upon or by virtue of it in any manner,” and the Vice-Chancellor therefore held that the whole fruits of the policy passed.
In Webster v. Donaldson, the plaintiff, in May, 1863, agreed to purchase an estate, including hay and crops, for £9,000. The purchase was to be completed on the 24th of June, when plaintiff was to have possession; and if not then completed, the plaintiff was to pay interest at the rate of 3 per cent, on the purchase-money from that day. By subsequent agreement, at the request of the purchaser, November was substituted for June. The contract was not concluded until February following, when the plaintiff paid the purchase-money, with interest only from the 29th of September, 1863. In the mean time the vendors sold the hay and garden produce, and it was held that, under the altered contract, the plaintiff was not entitled to the hay or produce. The Master of the Rolls says: “ I think that, having regard to the conditions of sale, the hay and growing crops were limited to those existing at the time of the conclusion of the sale; but as the purchaser was not to have possession until the purchase was completed, he could not properly gather the crops before that time.”
And as the conditions, as varied, expressly stated that the purchaser is not to receive any of the rents or profits of the land until the 29th of September, the Master very properly remarked that there would be a manifest advantage given to a purchaser, *204 by postponing the day for completion, if he were to have the crops exactly as if he had completed three months sooner, and yet escaped payment of the three months’ interest on the purchase-money.
In Terry v. Wheeler the title had passed, and Selden, J., made the remark quoted by plaintiffs’ counsel to show that in a case of that kind the risk as well as the increase attends upon the title and not upon the possession.
In Sheldon v. Sherman (42 Barb., 368) there was no contract of any land, and the case was decided upon the principles of common justice; and in Scranton v. Booth (29 Barb., 171), where the parties differed in their understanding as to the rent agreed between them, it was held that the tenant must pay what the premises were reasonably worth.
I cannot see how these two cases can be relied on as authority for the alteration of the plain terms of a written contract executed by both parties, or the interpolation of an additional obligation into the contract not contemplated by the parties at the time of its execution.
In Messenger v. The City of Buffalo (21 N. Y., 196) the city was held to have Impliedly assented to the alteration of the contract, because by its action it had rendered the performance of the plaintiff’s action impossible.
But what has the defendant in this case done so as to entitle the plaintiffs to an enlarged meaning of their contract ?
In Allanison v. The Mayor, &c., of the City of Albany (43 Barb., 33,1864), the question simply was whether a covenant in the plaintiff's contract “ that the plaintiff will commence said work and will proceed therewith without delay, and in such a manner as not to delay the contractor for the mason work,” imposed upon the defendants the obligation to have the building in readiness for the plaintiff to perform the condition, and the Court held that, unless it did, it would be a contract merely on one side, with no corresponding obligation, no duty to be performed on the part of the other contracting party.
To the same effect is Churchward v. Reg.(1 C. L. Q. B., 173, 1865).
*205 These cases merely decide that in some instances, where a contract would he void for want of mutuality, a correlative and corresponding obligation on the part of the other party will be implied, so far as it may become necessary for the purpose of sustaining the contract, but no more. But this doctrine cannot in any case be relied on as a justification for the imposition of a new, distinct, and additional obligation not embraced within the plain terms of a written contract, which has been executed by both parties, and which clearly defines their mutual rights and obligations.
The foregoing examination of the cases cited and relied upon by the plaintiffs wholly failed to disclose a principle or theory upon which the plaintiffs’ claims could be sustained. On the other hand, the cases of Decker v. Furniss (4 Kern., 612), Kelly v. Upton (5 Duer, 336), and Spear v. Hart (3 Robertson, 420), are such direct authority for the proposition that the contract in this case is executory only; that the title did not pass, no matter how the plaintiffs considered it; that the dividends and additional stock follow the title as recognized by the company, and that consequently the plaintiffs, notwithstanding their agreement to pay interest, are not entitled to the dividends and additional stock claimed by them—that the first three claims of the plaintiffs must be disallowed.
The fact that the plaintiffs, under their contract, made six deposits in the United States Trust Company, cannot make any difference in this respect, for two reasons:
First—Because the justice who tried the cause found, as matter of fact, that said deposits were made as security for the performance of the contract only; and,
Second—Because, even if they had been made as payments on account, as earnest-money to bind the bargain, the contract would not have been changed thereby; for the true legal effect of earnest-money is simply to afford conclusive evidence that a bargain was actually completed with mutual intention that it should be binding on both contracting parties; and the inquiry whether the title to the property has passed in such case is to *206 be tested not by the fact that earnest was given, but by the true nature of the contract concluded by the giving of the- earnest.
As to the fov/rtlh claim of the plaintiffs:
If. the defendant is liable at all, he is so for the simple bread of the contract to deliver the stock, the vendees not having paid to him the purchase-money in advance. The Justice at Special Term has found, as matter of fact, that the six deposits made by the plaintiffs in the United States Trust Company were made as security for the performance of the contract on their part, and this finding cannot be disturbed. The defendant had, until the 31st day of December, 1867, including*, the whole of that day, for the performance of the contract on his part, and I do not perceive how he could make, default so as to incur a liability to respond in damages, except upon a tender of the purchase-money made by the plaintiffs after that day. No such tender has been made.- But, as this point has neither been raised nor discussed, it may not be fair to decide the case upon this ground.
If, then, there has been any breach on the part of the defendant, it must have occurred, according to the evidence, either on the 19th or the 31st day of December, 1867, and the measure of damages in such case is the difference between the contract price of the stock and the market price on the day of the breach, with interest from that day (Clark v. Pinney, 7 Cowen, 681; Taylor v. Read, 4 Paige, 561; Dey v. Dox, 9 Wend., 129; Davis v. Shields, 24 Wend., 322 ; Beals v. Terry, 2 Sandf., 127; Dana v. Fielder, 2 Kern,. 40; Norton v. Wales, 1 Robertson, 568).
The market value of the stock on these days, as proved, conrpares with the contract price as follows
On Decernber 19—Contract price at 128, with interest
thereon from Feb. 18,1867, at six per cent.......... 1341-
Market value...................................... '132-§-
On December 31—Contract price, with interest thereon
from Feb. 18,1867, at six per cent................. 134f-
Market value..................................... 131f
*207 This comparison shows that the market value of the stock on either of said days was less than the contract price, and consequently the plaintiffs, even if there was a breach by the defendant, sustained no actual damage.
The Justice at Special Term was therefore right in holding that this rendered it unnecessary to consider whether there was such breach; and it follows that the exceptions taken and filed by the plaintiffs to the findings of said Justice, as well as to his refusal to find certain other facts, are, and every one of them is, clearly untenable.
The judgment appealed from should in all respects be affirmed, with costs.